MATHEWSON *vs*. THE BELMONT FLOURING MILLS COMPANY.

Where brokers, on behalf of a firm, ordered certain flour, with the direction to "ship, as soon as you can, 45 days' draft, B. Dub & Co.," and the flour was sent, and a draft was sent with the bill of lading, and an invoice stating the terms as·forty-five days' acceptance, the acceptance and return of the draft was a condition precedent to the passing of title; and where, before so doing, the firm made an assignment, the assignee took no more title than they had, and the vendor could recover the property in an action of trover.

March 30, 1886.

Sales.   Title.   Vendor   and   Purchaser.   Contracts. Principal and Agent.   Brokers.   Before Judge EVE.   City Court of Richmond County.   November Term, 1885·

The Belmont Flouring Mills Company brought trover for 639 sacks of flour against J. O. Mathewson. He had obtained the flour under an assignment from B. Dub & Company, for the benefit of creditors, and the question was, whether they ever had title, so as to be able to convey any to Mathewson.

The evidence showed that the flour had been ordered for B. Dub & Company by brokers in Augusta, who wrote to plaintiff, " Ship, as soon as you can, 45 days' draft, B. Dub & Company," the flour sued for.   Plaintiff forwarded the flour, and at the same time mailed a bill of lading, a 45 day draft and an invoice stating the terms as 45 days' acceptance, which were received before the flour arrived.

C. A. Thomas, plaintiff's manager, testified that sales for 45 days' acceptance were usual with B. Dub & Company ; that until the draft was excepted, the sale was not complete, and the title, by contract, remained in plaintiff. But the acceptance would pass the title; and that, as the draft had never been accepted, the plaintiff still claimed title to the flour.

B. Dub swore that the flour was bought on 45 days' credit.   The plaintiff generally sent out a note with the bill of lading.   " I never signed the note until after examining the flour.   I did not examine this flour.   In two or three days after the arrival of the flour, I made an assignment to J. O. Mathewson."

The case was submitted to the judge without the intervention of a jury.   He decided

" That it was the understanding of plaintiff, of which defendant had notice, that the sale was on condition that a 45 days' acceptance should be given ; that no draft has ever been given in compliance with the terms of the sale, and the sale was, therefore, never completed, and title never passed to B. Dub & Company, who were, in consequence, unable in law to convey title to J. O. Mathewson."

He thereupon rendered judgment for the plaintiff, and the defendant excepted.

ADOLPH. BRANDT, for plaintiff in error, cited : 1 Benj.

Sales, §§351, 352, 353, 354, 356, 357; 58 *Ga.*, 62 (4); 1 Add. Torts.

FOSTER & LAMAR, for defendants, cited: Code, §2639; 23 *Ga.*, 210; 58 *Id.*, 63 (5); 37 *Id.*, 619; 70 *Id.*, 418; 68 *Id.*, 138; Burrill Assign., 591; 75 *Ga.*, 697; 56 *Id.*, 45; 46 *Id.*, 230; 57 *Id.*, 149; 15 *Id.*, 189; 8 *Id* , 65; 70 *Id.*, 510; 71 *Id.*, 470; 1 Benj. Sales, p. 343, 344, 504; 15 Gray, 229; 123 Mass., 143; 126 *Id.*, 482; 66 Me., 580; 13 Rep., 238; 17 Wis., 477; 74 *Ga.*, 454; 73 *Id.*, 149.

JACKSON, Chief Justice.

The Belmont Flouring Mills Company sued Mathewson, in trover, for 639 sacks of flour. The flour had been ordered by brokers for Dub & Company, with this direction, "Ship, as soon as you can, 45 days' draft, B. Dub & Company," the flour in question. Dub & Company assigned it to Mathewson, as their assignee, without returning the draft signed, it being sent with the bill of lading and an invoice stating the terms as 45 days' acceptance. On law and facts, the case was referred to the judge, who held that the plaintiffs were entitled to recover, and this court concurs with him.

The assignee took only the assignors' title. The assignors, Dub & Company, had no title until the terms were fulfilled, which, through their agents, the brokers, they had made. Upon the signing and return of the draft, the sale was consummated and the title passed, and not before.

Benjamin on Sales, Corbin's Ed., 1884, page 343, citing 15 Gray, 229; 123 Mass., 143; 126 *Id.*, 482 and other cases. The giving the draft is a condition precedent. Benj. on Sales, pp. 344, 341, 343, 504, 502, 508 and citations. See also Thorpe *vs.* Fowler, 13 Iowa, 238.

It is well that the law is so. Common sense and a decent regard for morality endorse it. What a fraud on honesty it would be to allow such a transaction as this! To pass title before the goods were paid for by draft accord-

ing to contract, and thus enable the purchaser, in the teeth of his own contract, to assign property not his to pay his debts, would be to shock the moral sense of all men and shake all confidence in law.

Judgment affirmed.