## 57553. WALTER E. HELLER & COMPANY v. AETNA BUSINESS CREDIT, INC.

McMURRAY, Presiding Judge.

Aetna Business Credit, Inc. maintained a factoring arrangement with Chem-Tech Finishers, Inc. under which Aetna, in consideration of advance fees and interest charges, advanced funds to Chem-Tech in return for its assignment to Aetna of invoices representing accounts receivable generated by Chem-Tech in the normal course of its carpet finishing business. At the same time Walter E. Heller & Company (later determined to be doing business as Walter E. Heller & Company of Georgia) was providing various types of financing to Garrison Carpet Mills, Inc., which was in the carpet manufacturing business, in which it at times guaranteed payment of invoices involved in the business.

Essentially, there is involved in this case a chattel loan secured by receivables and equipment which Aetna made to Chem-Tech, and it agreed to factor accounts receivable for Chem-Tech. However, it could and did refuse invoices over an approved credit limit of $150,000 or where a customer's credit was withdrawn or not approved, or for any reason in Aetna's discretion. Aetna maintained a contractual right to reassign or charge back to the client (Chem-Tech) any invoice which came into dispute between Chem-Tech and one of its customers. Invoices were generally marked and pre-printed with a notice that they were assigned to Aetna, and Aetna only advanced monies on guaranteed invoices.

This case arose by reason of certain guaranties by Walter E. Heller & Company which were issued by Heller to Chem-Tech with reference to certain invoices allegedly assigned by Chem-Tech to Aetna. Aetna Business Credit, Inc. sued Garrison Carpet Mills, Inc. and Walter E. Heller & Company of Georgia for nonpayment of the invoices. Plaintiff alleges that certain disputes arose concerning various invoices factored to the plaintiff, whereupon it exercised its rights under its factoring contract with Chem-Tech Finishers, Inc. and charged back to it all of those items where dispute existed. Plaintiff then called upon the defendants to pay the balance of the account due

and owing from defendant Garrison Carpet Mills, Inc. as to invoices in which there had been no dispute or claim. The claim amounted to the sum of $142,901.20 together with interest and reasonable attorney fees after the demand had been refused.

Defendant Garrison answered admitting jurisdiction as to itself but denying that it had any obligation to pay the amount claimed by plaintiff inasmuch as the services allegedly furnished to it were not of an acceptable quality, hence it had no obligation to pay for them. It also added an affirmative defense of conspiracy between Chem-Tech Finishers, Inc. and plaintiff to bring this suit knowing of certain prior existing litigation initiated by defendant Garrison against Chem-Tech. However, by separate motion to dismiss it raised certain defenses of failure to state a claim, lack of jurisdiction over the subject matter and person of the defendant Walter E. Heller & Company of Georgia, as well as an insufficiency of process and service of process upon that defendant and also because of a failure to join a necessary party.

Walter E. Heller & Company answered denying the claim because the services allegedly furnished to defendant Garrison were not accepted by Garrison and it had no obligation to pay for them under the alleged guaranties by the terms of said guaranties. It also filed the same affirmative defense of conspiracy between plaintiff and Chem-Tech Finishers, Inc. with reference to prior existing litigation by the defendant Garrison and against Chem-Tech.

The case then came on for trial following considerable discovery and amendments of the petition, as well as the answers. The case thus involves such issues as failure to state a claim, improper venue and lack of jurisdiction, including numerous defenses as to the alleged liability of the defendant Heller under the guaranties, including the nonassignability thereof, actions by other parties that increased its risk and destroyed its right of subrogation, the nonoccurrence of various conditions precedent to its liability under the guaranties, and its right to set off various claims by defendant Garrison against Chem-Tech based primarily

upon the alleged defective nature of the carpet finishing services performed by Chem-Tech for defendant Garrison.

On June 21, 1978, during a four-day trial, the trial court directed a verdict against both defendants in favor of Aetna in the amount of $142,901.20. Both defendants filed separate motions for new trial which were later amended. Considerable post-judgment discovery then occurred, including plaintiff's request for supersedeas bond. After a hearing the motions were denied and although the motion for supersedeas bond had originally been denied in the event either of the defendants should seek to appeal, a supersedeas bond was then required to appeal. The defendant Heller appeals. However, because of its defunct status defendant Garrison did not prosecute its appeal. *Held:*

1. The guaranties issued by Heller and addressed to Chem-Tech provided that they be governed by the law of Illinois. The case was tried and considered with this provision in mind and numerous decisions of the appellate courts of Illinois were submitted to the trial court. See in this regard, Code Ann. § 81A-143 (c) (Ga. L., 1966, pp. 609, 654; 1968, pp. 1104, 1108). Heller contends that under Illinois law a guaranty could not be assigned to Aetna as Chem-Tech had purported to do.

The general rule under Illinois law is that a guarantor is released from his obligations where the creditor assigns his contract to a third party. This rule is predicated upon the assumption that the assignment would be a material alteration depriving the surety of expectations in an original party or materially affecting the operation of the instrument by addition of a party. This case does not fall within the general rule as Chem-Tech performed under the contract in its relationship with Garrison, and there was no assignment of this contract. The involvement of Aetna affects only the direction of the payment from the principal. This has been held not to be a material alteration under the Illinois appellate decisions. See Claude Southern Corp. v. Henry's Drive-In, Inc., 51 Ill. App. 2d 289, 304 (17-19) (201 NE2d 127).

2. In Illinois when the guaranty, as here, is a collateral continuing one, the general rule is that the

guarantor is entitled to reasonable notice of the default of the creditor. The right to this notice, however, is not absolute, and the failure to give it can only be availed of when it is made to appear that the guarantor has suffered a loss by such failure. Showing failure of notice and resultant loss is a burden resting with the guarantor. In this case Heller was given notice of default of Garrison by a letter in regard to a portion of the sum sued upon, but no notice of failure to pay sums subsequently coming due is shown. There is, however, no showing of any harm whatsoever to Heller by the lack of notice in regard to the later invoices. The defendant Heller having failed to carry its burden of showing harm, Heller may not escape liability solely due to the lack of notice. Taussig v. Reid, 145 Ill. 488 (32 NE 918); George Mamerow v. National Lead Co., 206 Ill. 626 (69 NE 504).

3. In order to leave Aetna with only "clean" invoices relating to transactions involving no dispute between Chem-Tech and Garrison, the disputed invoices were reassigned by Aetna back to Chem-Tech with Aetna retaining a security interest in these invoices. Chem-Tech ultimately enforced its laundrymen's lien for the reassigned invoices, collecting through the sale of Garrison's carpets in its possession, $54,900 out of the $58,000 sum of the reassigned invoices. See Laundrymen's Liens, Code Ch. 67-19, as amended, repealing Code § 67-1906 (Ga. L. 1956, p. 718).

Contrary to Heller's contentions it was not injured by Aetna's reassignment of these invoices or by the release of Aetna's security interest on these invoices. The reassigned invoices to which the proceeds of the laundrymen's lien sale were applied are not among the invoices upon which this suit is brought. To allow, as Heller suggests, the application of the foreclosure proceeds in this action, would allow in effect a double payment by Garrison for the funds realized from the foreclosure sale. Heller simply cannot involve this issue in this case.

4. Heller contends that it was entitled to assert all of the claims and defenses of Garrison as set-offs in this action. Heller argues that Aetna as assignee of Chem-Tech's accounts and Heller's guaranties took the

accounts and guaranties subject to the equities which existed between Chem-Tech and Garrison. The service performed by Chem-Tech was dyeing and application of backing to Garrison's unfinished carpet. Garrison's claims against Chem-Tech are predicated on allegedly defective carpet caused by the processing by Chem-Tech and the failure of Chem-Tech to return to Garrison carpet delivered for processing.

Heller argues that in granting the directed verdict in favor of Aetna, the trial court refused to recognize Heller's set-off rights and further erred in excluding evidence relevant to the set-off issue. The transactions underlying this lawsuit may be dissected into literally hundreds of separate transactions, each involving varying quantities of carpeting in a multitude of styles, color and quality. The evidence is that Chem-Tech charged by the pound for dyeing and by the square yard for backing. The unfinished goods which Garrison shipped to Chem-Tech represented investments of manpower and material which varied with the style of carpet and material used. In order to make any meaningful computation of the value of the alleged set-offs would involve making calculations using such data to determine value of the goods. In the absence of such data any results would be no more than speculation. We agree with the trial court's observation that the record in this case contains insufficient evidence to enable a jury to calculate the value of the alleged set-offs in a manner which would produce results beyond the realm of sheer speculation. No calculations were made for the jury, that is, submitted through the testimony of bookkeepers or accountants. The evidence that was excluded had reference to charge backs from Garrison to Chem-Tech involving invoices not involved in this lawsuit. The record contained insufficient evidence which would allow a determination of the alleged set-off. The trial court did not err in disregarding the allegations of set-off. See *Hayes v. Flaum,* 138 Ga. App. 787 (227 SE2d 512); *Tri-State Systems, Inc. v. Village Outlet Stores,* 135 Ga. App. 81, 85(2) (217 SE2d 399).

5. Defendant's contention that no proper foundation was laid for the invoices upon which the verdict and judgment depend is without merit. Chem-Tech's

corporate secretary testified that the invoices were prepared by Chem-Tech to reflect the services rendered to Garrison. The original invoices and a copy were then turned over to plaintiff Aetna which conveyed the original to Garrison. That the invoices admitted were from the files of Aetna rather than Chem-Tech goes to weight rather than admissibility. See Code Ann. § 38-711 (Ga. L. 1952, p. 177). The witness testified that the invoices were created in the regular course of Chem-Tech's business. See *Whitehead v. Joiner,* 234 Ga. 457, 459(3) (216 SE2d 317). Compare *Martin v. Baldwin,* 215 Ga. 293, 299 (110 SE2d 344).

6. Heller's eighth enumeration alleges error in admitting evidence of matters occurring during settlement negotiations. Heller's argument in support of this enumeration is limited to the cross examination of Mary Ellen Levitch, an employee of Heller. However, we have failed to find any objection to the questions and responses of which Heller now complains. The objection to which we are referred simply contains no mention of these questions and answers. This objection may not be raised for the first time on appeal. *Carroll v. Johnson,* 144 Ga. App. 750, 754 (5) (242 SE2d 296).

7. The trial court erred in granting plaintiff's motion for directed verdict as material issues of fact remain as to the amount for which the defendant Heller is liable. The guaranties sued upon were each in the amount of $100,000 for a definite period of time except for the last guaranty of March 30, 1976, in the amount of $150,000 but also for a definite period. Each of the guaranties by its terms was applicable only to transactions "hereafter" made. This word ("hereafter") is plain, unambiguous, and capable of only one reasonable interpretation, and therefore required no construction. The trial court should not have considered conflicting parol evidence as to the intention of the parties. Code Ann. § 20-704 (1) (Ga. L. 1964, pp. 414, 415); *Early v. Kent,* 215 Ga. 49, 50 (1) (108 SE2d 708). Plaintiff submitted invoices from which the jury could have determined the amounts guaranteed (up to $100,000 each for two periods of time and $150,000 for the third period). The trial court accepted testimony that a sum of $142,901.20 was due plaintiff as guaranteed by

defendant Heller and directed the verdict as to this amount. However, defendants submitted evidence that would show records and computations of considerably lesser amounts due for two periods, and more than $120,000 due for another, wherein Heller had only guaranteed $100,000 for that period. As there was considerable conflict in the testimony and the records of the bookkeepers and accountants, the trial court erred in directing the verdict.

8. After the verdict was returned in favor of plaintiff Aetna in the amount of $142,901.20, the trial court in its judgment added interest at the rate of 7% per annum from June 16, 1976, until the date of payment. Defendants' (Heller and Garrison) motion to amend the judgment to conform to the verdict was denied. The judgment and execution shall conform to the verdict. Code § 110-301. A verdict may not be amended in matters of substance after it has been received and recorded, and the jury has dispersed. Code § 110-111. "This is none the less true in a case wherein the court had directed what the verdict should be." *McCrary v. Gano,* 115 Ga. 295 (41 SE 580). See also *Fried v. Fried,* 208 Ga. 861 (3) (69 SE2d 862); *Davis v. Wright,* 194 Ga. 1, 6-7 (4) (21 SE2d 88). The trial court erred in entering judgment which by the addition of the interest failed to conform to the verdict.

*Judgment reversed. Deen, C. J., and Shulman, J., concur.*

ARGUED APRIL 3, 1979 — DECIDED SEPTEMBER 17, 1979 —
REHEARING DENIED OCTOBER 23, 1979.

*Don W. Johnson, S. Phillip Heiner, Barbara A. Speck,* for appellant.

*Warren N. Coppedge, Jr., James H. Bisson,* for appellee.