## 61272. WALTER E. HELLER & COMPANY v. AETNA BUSINESS CREDIT, INC.

DEEN, Presiding Judge.

This case in a prior appearance is found as *Walter E. Heller & Co. v. Aetna Business Credit, Inc.,* 151 Ga. App. 898 (262 SE2d 151) (1979). Research and study of the voluminous record and cited cases applicable thereto of many complex issues convinces us that appellant has not produced any evidence authorizing a contrary result to that found by the trial judge. We affirm the denial of defendant Heller's motion for partial summary judgment and the grant of plaintiff's summary judgment against Garrison and against Heller. While this court could draft a lengthy analysis addressing all questions presented we are not sure it would be an improvement over that done by the trial judge. We hereby adopt in part the well reasoned and scholarly opinion written by The Honorable Charles A. Pannell, Jr., dated June 10, 1980:

"The above and foregoing case came before the Court for a hearing on the 28th day of April, 1980, pursuant to Order of the 3rd day of March, 1980. The Court had before it the following motions:

"1. Defendant Heller's oral Motion to Modify Order of the 3rd day of March, 1980 . . .

"3. Defendant Heller's Motion for Partial Summary Judgment.

"4. Plaintiff Aetna's Motion for Summary Judgment against

defendant Garrison and against defendant Heller.

"The motions were heard and extensively argued by counsel. Briefs have been filed and considered and the Court now enters its Order on each motion in sequentia.

- 1 -

"Heller complains of the portion of the Court's Order of the Court's Order of the 3rd day of March, 1980, wherein the transcription thereof stated that the granting of Heller's motion to permit filing of counterclaim approximately three and one-half (3 1/2) years after the plaintiff instituted its action, 'would prejudice the plaintiff.'

"The Court has reviewed the transcript of the hearing and finds Heller's motion to be well taken in part. The Court orders that the following phrase be stricken, 'The Court finds that to permit Heller to assert its proposed counterclaim some three and one-half (3 1/2) years after the date upon which it was known to the defendant Heller would prejudice the plaintiff,' and the court inserts in lieu thereof the following phrase, 'The Court finds that Heller has not demonstrated that the plaintiff Aetna would not be prejudiced.' The result of the Court's ruling is not affected by this Order. The Court declines to amend its ruling further. The Court is persuaded by Division 4 of the opinion expressed in *Blount v. Kicklighter,* et al., 125 Ga. App. 159 at 161-163 . . .

- 3 -

"Heller's Motion for Partial Summary Judgment sounds in the language endorsed on the bottom of the guaranty of March 30, 1976, as follows: 'This guaranty cancels and supersedes any previously issued guaranty.' See Exhibit 'E' to plaintiff's complaint. Heller argues that the import of this language is to terminate any obligation that Heller might have had under any prior guaranties. Such a position is simply untenable under our law. Divisible and continuing guaranties may be cancelled 'in futuro only'. *Haynie v. First National Bank,* 117 Ga. App. 766; *White v. Chapman,* 149 Ga. App. 409 at 412. Accordingly, defendant Heller's Motion for Partial Summary Judgment is denied.

- 4 -

"The first issue which presents itself to the Court for determination is whether or not the trial court can grant a Motion for Summary Judgment after a reversal by the Court of Appeals in the same case of a previous trial court order granting of a Motion for Directed Verdict where the moving party in each instance was the

plaintiff below.

"The Court answers the question in the affirmative. The requirement of a new trial on the merits de novo does not necessarily contemplate a jury trial and does not preclude the granting of such a motion. *Worley v. Travelers Indemnity Company,* 121 Ga. App. 179. Furthermore, in *Worley* the Court is directed to examine the reasons given for the previous reversal and to respect and apply the same in the conduct of the new trial even though there is no direction to that effect. However, where there has been no direction from the Appellate Court, as here, this Court is cautioned that it should not embody the reasons set forth in the opinion in a new judgment based upon the former trial. This Court is therefore not to operate in a vacuum, but is to examine the record de novo on Motion for Summary Judgment.

"Accordingly, the Court's method of approach to this rather complicated case has been to examine plaintiff's contentions as to the establishment of the amount due on account and under each of the guaranties separately and then to examine each of the defenses interposed by Garrison and/or Heller in sequentia to determine whether or not any new evidence has been presented and is in the record which would require a result different from that obtained in the previous appearance of this case before this Court and the Court of Appeals. If the Court had found material issues of fact to exist, the Court would have denied the Motion for Summary Judgment as to any issue controlled thereby. It was and is the court's intention to rule severally on each issue presented by the motions pending pursuant to 81A-156 (a), (b), (c) and (d). In all, the Court approached the issues de novo, but with respect for and application of the opinion of the Court of Appeals in this case especially where new facts do not mandate some change therein.

"Plaintiff contends that under the rule in *Escambia Chemical Corporation v. Rocker, et al.,* 124 Ga. App. 434 (2), and *Tri-State Culvert Manufacturing, Inc. v. Crum, et al.,* 139 Ga. App. 448, that the burden on the Motion for Summary Judgment shifts to Heller when the plaintiff establishes its right of recovery against Garrison, the principal, and the coverage of the guaranties issued by Heller, as this Court has found in Division 4 (a) of this opinion, *infra.* The Court does not agree with the plaintiff's position in this regard. The plaintiff would be correct upon the trial of the case if the plaintiff had first obtained judgment against the principal. In such a case the presumption of *Escambia* would shift the burden of proof to the guarantor. However, the burden of proof on Motion for Summary Judgment is upon the plaintiff to show that there is no genuine issue of material fact regardless of whether the plaintiff or the defendant

would have the burden upon the trial of the case, and the party opposing the motion must be given the benefit of all reasonable doubts and of all favorable inferences from the evidence. *Burnette Ford, Inc. v. Hayes, et al.,* 227 Ga. 551, and *Word v. Henderson, et al.,* 110 Ga. App. 780.

"However, this does not mean that the party opposing the motion may merely sit back and rest without presenting evidence contrary to the movants prima facie case. This Court is most persuaded in the instant case by the opinion of the Supreme Court in *Summer-Minter & Associates, Inc., et al. v. Giordano, et al.,* 231 Ga. 601, which presents facts strikingly similar to the case at bar. In *Summer-Minter,* a case had been tried, reversed without direction, amendments to defenses had been permitted, there as here after the reversal, and Motion for Summary Judgment had been made. The Supreme Court held:

" 'When a motion for summary judgment is made. . ., an adverse party may not rest . . . [on] his pleading, but his response . . . must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

"It is thus seen that it is the duty of each party at the hearing on the motion for summary judgment to present his case in full. (Citations omitted.) A party against whom summary judgment has been granted is in the same position as if he suffered a verdict against him. (Citations omitted.) Thus, it is evident that an adjudication on summary judgment is an adjudication on the merits of the case (Citations omitted.) . . . In the present case, plaintiffs restyled their original complaint, framed according to a civil conspiracy theory of recovery, to conform to a different theory of recovery based on tortious interference with rescue of property. This second theory of recovery, if it exists at all, was ascertainable under the original complaint as amended. Under our practice of notice pleading, the plaintiff has the benefit of any theory of recovery which can be gleaned from his complaint. Accordingly, restyling the complaint in terms of a theory of recovery ascertainable in the original case did not cause the case to survive the prior adjudication on the merits.'

"See also *Goldsmith v. American Food Services, Inc.,* 123 Ga. App. 353, where the Court held:

" 'Plaintiff here in support of his motion relied upon the pleadings, the evidence at the prior trial and our holding on the earlier appeal. Insofar as the defendant's defense based on grounds which we held to be insufficient as a matter of law, the defendant did nothing. Thus, on these defenses, summary judgment for plaintiff would be demanded.'

"4. (a) Neither Heller nor Garrison have interposed any evidence, facts or authority which would controvert Aetna's assertion that the total debt on account is $142,901.20. Therefore, Aetna's Motion for Summary Judgment against Garrison Carpet Mills, Inc. is GRANTED.

"4. (b) The next issue to be determined is whether or not Heller's three guaranties cover all or any part of Garrison's debt to Aetna.

"To meet the defect in the proof previously presented in this Court as determined by the Court of Appeals, *Walter E. Heller & Co. v. Aetna Business Credit, Inc.,* 151 Ga. App. 898 at 903, 'The trial court accepted testimony that a sum of $142,901.20 was due plaintiff as guaranteed by defendant Heller and directed the verdict as to this amount. However, defendant submitted evidence that would show records and computations of considerably lesser amounts due for two (2) (guaranty) periods and more than $120,000.00 due for another (guaranty period), wherein Heller had only guaranteed $100,000.00 for that period.'; Aetna has abandoned its own calculations with regard to the sums due under the guaranties. Aetna has further abandoned its contention that the final guaranty of March 30, 1976, covers all of the debt and now relies upon the Affidavit of Fred A. Mayfield, a Certified Public Accountant employed by Heller's prior attorney of record in this case, to calculate the invoice sums due separately during each period of guaranty. (See defendant's Exhibit 35 and Mayfield Affidavit.) Pursuant to the Mayfield Affidavit: (1) $7,761.00 in invoices are open under the guaranty of September 11 — December 31, 1975, and are within its limits; (2) $120,148.00 in invoices are open under the guaranty of January 15 — March 30, 1976, but are limited by the maximum of $100,000.00, liability limit stated in the guaranty itself; and (3) $17,411.00 in invoices are open under the guaranty of March 31 — April 16, 1976, and are within its limits. Accordingly, and as succinctly put by the Court of Appeals in its opinion (Division 7), each of the guaranties by its terms was applicable only to transactions 'hereafter' made. Each of the guaranties is plain and unambiguous and will stand on its own establishing the rights and liabilities of the parties. Heller cannot be heard to complain nor would it be prejudiced by Aetna's accepting Heller's calculations as to the sum due under each guaranty, which was less than Aetna's original calculations. By taking the lesser of the sums authorized by the evidence and accepting the same, Aetna has eliminated any issue of fact as to the total sum due and as to the sum due under each guaranty.

"4. (c) The final issue to be determined is whether or not Garrison or Heller have any affirmative defense, set off or right of

avoidance which would defeat Aetna's recovery.

"The issues of law as to the coverage of the guaranties, their assignability and their revocation, having been previously determined by this Court in Division 3 of this opinion and by the Court of Appeals in Divisions 1 and 2 of its opinion, it is apparent that Garrison owes Aetna $142,901.20 and that Heller owes Aetna $125,172.00 as the guaranteed portion of the larger sum unless some right of set off or credit asserted by Garrison or Heller should be deducted therefrom. Again it is Aetna's burden to show that no material issue of fact exists with regard to such claim of set off, avoidance or other defense. *Word v. Henderson, supra.* This Aetna seeks to do primarily by relying on the prior record. The Court will examine the defenses in sequentia as argued before the Court on April 28, 1980.

"The first and second defenses of Heller, as amended, contain Heller's answer to the complaint and the defense of 'failure to state a claim,' neither of which is relevant to the Motion for Summary Judgment now under consideration.

"Heller's third defense and the first part of its fifth defense relate to Heller's contention that Chem-Tech Finishers failed to sell and deliver proper services to Garrison which were not fully accepted by Garrison. No new evidence has been introduced by either party on this point. Accordingly, Aetna has made a prima facie showing which has not been contradicted by the defendants and (See Transcript of hearing, pages 51 and 52.) Aetna is entitled to summary judgment as regards this defense as the same was controlled adversely to Heller in Division 4 of the opinion of the Court of Appeals. *Walter E. Heller & Company v. Aetna Business Credit, Inc.,* 151 Ga. App. 898 at 901, 902. See *Goldsmith v. American Food Services, Inc., infra.*

"Heller's fourth defense, i.e. that the claims against Heller are barred in whole or in part for the fact that the March 30, 1976, guaranty by its terms cancelled and superseded the prior guaranties is controlled adversely to Heller by Division 3 of this opinion.

"In Part (b) of its fifth defense Heller restates that the seizure and sale of certain merchandise by Garrison to Chem-Tech under a Laundrymen's Lien was unlawful. Heller had previously asserted this defense contending that the exercise of the lien was unconstitutional, jeopardized its subrogation rights, and increased its risk. Heller also contends now as previously that Aetna's failure to enforce its security interest in these invoices injured Heller.

"In Division 3 of its opinion, the Court of Appeals held: 'Contrary to Heller's contentions, it was not injured by Aetna's reassignment of these invoices or by the release of Aetna's security interest on these invoices. The reassigned invoices to which the

proceeds of the Laundrymen's Lien sale were applied are not among the invoices upon which this suit is brought. To allow, as Heller suggests, the application of the foreclosure proceeds in this action, would allow in effect a double payment by Garrison for the funds realized from the foreclosure sale. Heller simply cannot involve this issue in this case.'

*"No new evidence has been introduced by either party on these points.* Accordingly, Aetna has made a prima facie showing which has not been contradicted by the defendants and these previously asserted defenses in Heller's fifth defense are controlled adversely to Heller by Division 3 of the prior opinion of the Court of Appeals, and Aetna is likewise entitled to summary judgment thereon. See *Goldsmith v. American Food Services, Inc., infra.*

"Nor can Heller require Chem-Tech or Aetna to apply the proceeds of the Laundrymen's Lien sale to the guaranteed portion of Garrison's debt to Chem-Tech as opposed to that portion of the debt in excess of the guaranty issued by Heller. Under the terms of the Heller guaranties, and each of them, they are guaranties of a certain limit of debt for a specified period of time, but they do not limit the quantum of credit extended to Heller's principal Garrison. *State Bank of Rock Island v. Bryan,* 186 Ill. App. 207; *Schiff v. Continental Bank & Trust Company of Chicago,* 255 Ill. App. 333; *Malleable Iron Range Co. v. Charles M. Pusey,* 244 Ill. 184 (4); *Taussig v. Reid,* 145 Ill. 488, 497; *Sherburn v. J. W. Butler Paper Company,* 40 Ill. App. 383; *Frost v. Standard Metal Company,* 215 Ill. 240 (2); *Herringa v. Ortlepp,* 167 Ill. App. 568; *Aetna Casualty & Surety Company v. Village of Maywood,* 262 Ill. App. 206 at 215; *Hardware Dealers Mutual Fire Insurance Company v. Ross,* 129 Ill. App. 2d 217; all of which cases were previously cited to the Court of Appeals concerning the Illinois law on this point.

"However, Heller contends that it has introduced new evidence which would produce a new result under sub-paragraph (b) of its amended fifth defense. Heller now asserts that the Laundrymen's Lien seizure was unlawful, contending that Chem-Tech Finishers did not own the accounts over which Chem-Tech asserted its lien against goods of Garrison in Chem-Tech's possession and over which Heller further contends that it had a prior security interest. Heller contends that these facts were not brought to the attention of the Court of Appeals or the trial court previously.[1] Heller further contends that

---

[1] Heller presented no new facts concerning "ownership" of invoices although it appears that the issue was not previously raised or decided in this Court or in the Court of Appeals. The facts pertaining to Heller's claim of prior security interest in the inventory of Garrison are new but admit of no factual dispute.

Aetna is liable to it for reassigning to Chem-Tech Finishers certain invoices to Chem-Tech so as to provide title to Chem-Tech, a basis upon which to assert its Laundrymen's Lien. However, it has been previously decided by this Court and by the Court of Appeals that Heller was not injured by Aetna's reassignment of the invoices or by the release of Aetna's security interest on the invoices. Considering all of Heller's factual allegations in a light most favorable to it and as being true, nothing material appears of record to alter this prior determination of the Court of Appeals.

"Heller's position now is that it has a right to a set off or a counterclaim against Aetna on the account of Garrison to Aetna as guaranteed by Heller arising out of the 'new' issues of ownership of the invoices and the prior security interest in Garrison's inventory claimed by Heller. These are legal issues. The Court has previously denied Heller's counterclaim as being unseasonally filed. The Court will not consider Heller's allegations of set off and will address Heller's contentions in this regard as presenting the following issues: (1) who owned the accounts; (2) does it make any difference if Heller had a prior security interest in Garrison's inventory; (3) did Aetna engage in any conduct which injured or damaged Heller?

"The Court finds no issue of fact in the ownership of the accounts. It is the Court's duty to construe the contractual relationship and the Court finds no such ambiguity in this case. Georgia Code Annotated § 20-701; *Warrior Constructors, Inc. v. E. C. Ernst Co., Inc.,* 127 Ga. App. 839. The relationship of Aetna and Chem-Tech as to the ownership of the accounts is defined in the factoring agreement between Aetna and Chem-Tech. (See plaintiff's Exhibit 7.)

"In paragraph (a) of that agreement Chem-Tech '*OFFERS*' to assign, pledge and sell to Aetna all of its accounts receivable.

"Paragraph (b) indicates that the invoices to Chem-Tech's customers shall disclose the pledge, assignment, ownership and direction of payment as being in Aetna.

"Paragraph (c) contains a warranty to Aetna by Chem-Tech that the invoices to its customers will represent bona fide transactions subject to no dispute, customer claim, off set or counterclaim and will be subject to no deduction, allowance, etc. and that the customer has accepted or will accept the merchandise.

"Paragraph (d) provides that upon the breach of warranties, above mentioned, Aetna will have the right to charge back the account at the full net face value.

"Paragraphs (f) and (g) of the contract give Aetna the right in its sole discretion at the time of assignment and pledge to advance or not

to advance money upon the accounts not approved by Aetna, or to charge back monies advanced and to cancel any 'purchase' of the account in excess of Aetna's guaranty which has been defined by the witnesses as 'the credit limit.'

"Paragraph (h) provides that Chem-Tech has no right to demand reassignment of an account until Aetna is paid. However, there is no limit on Aetna's authority to charge back or reassign the account at any time.

"Thus, the relationship between Aetna and Chem-Tech with reference to the accounts is clear, is contractual in nature, is highly favorable to Aetna and amounts at best to a conditional sale of accounts and at least to a mere offer to sell subject to Aetna's approval as to whether or not it will accept the accounts at all or in part only up to a certain credit limit which Aetna will determine and is further subject to Aetna's right to reject the account for any number of reasons described above.

"Under the contract and in accordance with the parties' presentation to this Court, there is no dispute of fact that Aetna had a security interest in all of Chem-Tech's accounts.

"Heller contends that the stamped form on the pre-printed invoice, 'This account is owned by and is payable in par funds to our factors only, Aetna Business Credit, Inc., 100 North Hamilton Street, Box 1168, High Point, N. C. 27281.', is evidence that Aetna owned the account and creates an issue of fact which would result in the denial of plaintiff's Motion for Summary Judgment. The Court does not agree for the Court must look to the substance of the contractual relationship between the parties rather than to the stamped or preprinted form on the invoice. *Redfern Meats v. Hertz Corporation,* 134 Ga. App. 381 at 391; *Hays v. Jordan,* 85 Ga. 741 at 748; *Fenner & Bean v. Holt,* 2 F. 2d 253 (1924) (5th Cir.) cert. denied 267 U. S. 605, which holds: 'However, forms are not important, Courts will look at the actual transactions.' See also *Lipson v. Hawthorne Industries, Inc., et al.,* 148 Ga. App. 751 at 753, wherein it is held, 'There is no magic in mere nonmenclature, and the inquiry of the Court is always directed to substance and not to form.'

"The record of the previous trial of the case contains uncontradicted evidence that Aetna was not obligated to accept any such invoice which Chem-Tech offered to assign or to sell and *did not in fact purchase invoices over a credit limit existing at any one time.* For example, T 60:

" 'A - They (Aetna) will not render any funds against client risk account. Q - O. K. So this was not a client risk account, am I right? A - In part it was. Q - O. K. As to what part? A - The part that it opened beyond the (Heller) guaranty. Q - O. K. And any part that was

disputed? A - Correct.' and T 67 where the credit limit September 11th through December 30, 1975, was $100,000.00; January 15, 1976 through March 30, 1976 was $100,000.00 and $150,000.00 after the 'third guaranty' (of Heller).

"See also page T 170:

" 'Q - Then you're saying the moment you got over $100,000.00 or $150,000.00 as the case may be, an invoice outstanding which you assigned to Aetna automatically it went on client risk and they wouldn't advance you the money on it? A - You're right.' and page T 201-202: 'Q - Now, the terms of the Chem-Tech agreement with Aetna, you all had your risk for everything over $150,000.00? A - Yes sir. Q - That was over the credit, wasn't it? A - Over the amount of the guarantee, yes sir. Q - What is the difference between a guarantee and a credit line? A - Well, in this case it was the same.'

"See also page T 320.

"Thus, the uncontradicted evidence shows that Aetna never paid Chem-Tech for invoices in excess of the credit limit and that it charged back the disputed invoices. Without such acceptance by Aetna of the invoices 'offered' or de facto acceptance by payment there was no sale or purchase as to the invoices in excess of 'the credit limit' established by Aetna, and there was a failure of a condition precedent to the transfer of title to the accounts receivable represented by the disputed invoices.

"As noted by the Court of Appeals in its prior decision (h. 3), Aetna (owned) was left with the so called 'clean' invoices; their value being "142,901.20 after the reassignment. However, Aetna did not own any invoices in excess thereof.

"A condition precedent to the sale of all invoices to Aetna, i.e. the full acceptance of merchandise by Chem-Tech's customer represented by those invoices, and maximum credit limit having failed, there was no sale of invoices in excess of that sum. Title does not pass until the condition precedent is fulfilled. *Mathewson v. The Belmont Flowering Mills Co.,* 76 Ga. 357. Where the assignment is subject to specified conditions, that assignment does not become effective until the happening of the conditions. *Howell v. Maine & Company,* 127 Ga. 574. Furthermore, since Chem-Tech's offer to sell the invoices to Aetna was subject to Aetna's acceptance or approval in Aetna's sole discretion, the offer amounted to an executory option and title would not pass to the buyer until acceptance. See Georgia Code Annotated § 109A-2—327, Georgia Code Annotated § 20-109, 110.

"The provisos in the contract between Aetna and Chem-Tech requiring the invoices to represent completed transactions, accepted in full by Chem-Tech's customer without claim or dispute, are

stipulations within the contractual rights of the parties, and therefore the other covenants in the contract between Aetna and Chem-Tech with respect to Aetna's purchase of the invoices are conditioned upon the above stipulation. *Whitehead v. Cranford,* 210 Ga. 257 (3). Additionally, the offer to sell is not binding on the offeree and does not amount to an executed contract of sale until it is accepted. See *Simpson v. Sanders,* 130 Ga. 265 at 268; *Jones v. Vereen,* 52 Ga. App. 157; *Floyd v. Morgan,* 60 Ga. App. 496 (2). Furthermore, in the instant case the acceptance of the tendered invoices was solely in the discretion of Aetna. In such event there is no contract until there is an acceptance of the offer to transfer. This form of contract has been approved in *Creative Service, Inc. v. Spears Construction Co.,* 130 Ga. App. 145; *MacKenzie v. Minis,* 132 Ga. 323; *Stone Mountain Properties v. Helmer,* 139 Ga. App. 865 at 868.

"As between Aetna Business Credit and Chem-Tech, title to the invoices is immaterial with respect to Aetna's right to enforce its secured claims, § 109A-9—202, and since the title to the unaccepted invoices remained in Chem-Tech, Chem-Tech had the right to collect the same at all times.

"There can be no doubt that even though Chem-Tech had assigned the invoices in question to Aetna for security purposes, Chem-Tech had a right to maintain an action on the mortgaged property. Section 9 of the Uniform Commercial Code is controlling. Section 109A-9—102 (1) (a) applies to the creation of security interest in accounts as defined by § 109A-9—106. § 109A-9—202 of the Uniform Commercial Code does not seek to place 'title' in the secured party Aetna or in the debtor Chem-Tech, and leaves that determination to other rules of law and/or the contract. In addition to the Court's interpretation of the contract between Aetna and Chem-Tech and the rules of law applicable thereto as set forth hereinabove, the Court is mindful that in Georgia a mortgage or an assignment for security purposes creates a lien only and does not pass title. See Georgia Code Annotated § 67-101.

"The cases cited by Heller, *Roberts v. Hill,* 78 Ga. App. 264; *Andrews, et al. v. Adams Drive Ltd.,* 142 Ga. App. 32; *Chattahoochee Holdings, Inc. v. Marshall,* 146 Ga. App. 658, are inapposite because they referred to an unconditional assignment of title (ownership) as distinguished from a conditional offer to assign title coupled with an assignment for security purposes.

"Likewise, Heller presents no material issue of fact for determination before this Court which would result in a denial of Aetna's Motion for Summary Judgment by the contention that Heller had a prior security interest in the inventory of Garrison

Carpet Mills over which Chem-Tech Finishers exercised its lien rights. The facts are not in dispute. Heller cannot support its contention of a security interest in inventory under Financing Statement No. 32438 filed February 5, 1974, for the reason that inventory is specifically excepted from that property of Garrison Carpet Mills over which Heller took a security interest. Likewise Heller perfects no security interest over Garrison's inventory by Financing Statement No. 32579 filed February 20, 1974, for the reason that inventory is not included therein.

"The legal question presented by Heller is whether or not continuation statement, No. 37891 filed December 24, 1975, is sufficient to give notice of Heller's security interest in the inventory of Garrison. This continuation statement referred to, UCC Financing Statement No. 24163, filed March 26, 1971, naming Southland Chemical & Carpet Finishing, Inc. as debtor and Heller as secured party. Amendments were filed to that financing statement on May 10, 1971, and on November 2, 1972, which are not relevant hereto. On February 25, 1974, a document denominated 'an amendment' stating 'name and address of debtor amended to Garrison Carpet Mills, Inc., 1408 May Street, Dalton, Georgia 30720' was filed. Such an amendment would not be effective under 109A-9—402 (4) after 1978 when that statute was amended specifically to require signatures of debtors to amendments to financing statements and accordingly, there would be nothing for the continuation statement to refer to except the original filing of Heller showing Southland Chemical & Carpet Finishing, Inc. as debtor.

"However, the legal question presented by Heller here is whether or not prior to 1978 an amendment to a financing statement required the signature of the debtor in order to be effective. It is undisputed that the amendment did not contain the signature of the debtor in this case. The Court finds that the debtor's signature was required prior to 1978.

"Prior law, Georgia Laws 1962, page 156 et seq. at pp. 414, 415, sets forth the following: '(4) The term "financing statement" as used in this article means the original financing statement *and any amendments* . . .' Therefore, the formal requisites of the financing statement and amendments are defined in sub-section (1) of 109A-9—402 at page 414 which requires '(1) A financing statement is sufficient if it is signed by *the debtor* and the secured party . . .' Since the term 'financing statement' is defined as either the original financing statement or any amendment, both must have been executed by the same formal requisites, to-wit, the signature of the debtor as well as the secured party.

"However as previously stated, the Court finds it unnecessary to

answer this legal question for the purposes of determining this case and even assuming that Heller has a perfected security interest in the inventory over which Chem-Tech Finishers exercised its Laundrymen's Lien, the result is not altered. Again to allow under these fact circumstances, as Heller suggests, the application of the foreclosure proceeds in this action would allow in effect a double payment by Garrison from the funds realized from that foreclosure sale. Heller simply cannot involve this issue in this case. The reason is simple and is found in the authority cited to the Court by Heller at *American Finance Company v. First National Bank of Newnan,* 135 Ga. App. 24; *Cooper v. Citizens Bank of Gainesville,* 129 Ga. App. 261. Aetna did not engage in any conduct which injured or damaged Heller. The reassignment of the invoices by Aetna did not injure Heller regardless of whether or not Heller was a prior lienholder. There is no issue of fact, but that Aetna reassigned invoices on June 4, 1976. Aetna did not participate in the exercise of the Laundrymen's Lien by Chem-Tech nor did Aetna enjoy any of the proceeds thereof. Therefore, all actions with regard to the filing and foreclosure of the Laundrymen's Lien, retention of goods, whether wrongful or not, and whether or not the same interfered with Heller's contended prior recorded security interest would be the subject of an action by Heller against Chem-Tech Finishers which Heller has instituted in the United States District Court for the Northern District of Georgia (See transcript of hearing, April 28, pages 4, 54, 64.) and should be resolved in that forum.

"The essential reason why Heller's amended fifth defense will not preclude the granting of the Motion for Summary Judgment in Aetna's favor and why the claim of prior security interest is not controlling is because of the fact that at the time of the alleged and admitted reassignment on June 4, 1976, all of Heller's rights had previously accrued and none of the alleged conduct of Aetna in the reassignment of invoices could have injured Heller in any way. The record discloses that Chem-Tech Finishers asserted its Laundrymen's Lien on April 12, 1976. Heller's security interest in Garrison's inventory, if it existed, was also in existence on that date and such rights as Heller may have had in that inventory were not changed or altered by the reassignment of invoices. The reassignment merely liquidated the account between Aetna and Chem-Tech as to the quantum of invoices purchased by Aetna. As to Heller, the reassignment is moot and affects its rights in no substantive way. Heller is absolutely correct when it asserts that it has a right pursuant to *American Financing Co. v. First National Bank of Newnan,* and *Cooper v. Citizens Bank of Gainesville,* supra, to pursue Chem-Tech if Chem-Tech converted property under a claim of Laundrymens' Lien

to which Heller had a prior perfected security interest. Heller's right to recover is not affected by the reassignment of invoices since Heller then had and now has in addition to its right of claim under Georgia Code Annotated § 39-801 that right of action against Chem-Tech for conversion which it is pursuing in the United States District Court. Again to permit Heller to involve the Laundrymen's Lien issue in this case would admit of a double recovery with regard to the payment of the Garrison account. However, to permit Heller to pursue its rights against Chem-Tech arising from its contended claim of prior security interest in the goods seized by Chem-Tech, would not admit of double recovery, if Heller is correct, but would only permit Heller to recover what its prior security interest, if any, entitled it to recover.

"Heller's sixth defense, failure of notice of default; seventh defense, increase of risk under guaranties; and ninth defense, breach of obligations of the plaintiff under the guaranties are controlled adversely to Heller in Divisions 1, 2 and 3 of the prior decision of the Court of Appeals. No new evidence pertaining to these defenses has been presented to the Court and accordingly Aetna has made a prima facie showing which has not been contradicted by the defendants and upon these issues the plaintiff is entitled to prevail in its Motion for Summary Judgment. *Goldsmith v. American Food Services, Inc., infra.*

"Again Heller has established no set off or claim of defective services rendered by Chem-Tech although it has had a right and opportunity to do so. The movant Aetna relies upon the record in this regard and pursuant to this Court's prior ruling and Division 4 of the prior opinion of the Court of Appeals, the record fails to establish any right to a set off on this basis. Aetna's Motion for Summary Judgment is not defeated on account thereof. *Goldsmith v. American Food Services, Inc.,* infra.

"In Heller's eighth defense, Heller contends that Chem-Tech and Garrison entered into a contract to permit Chem-Tech to hold inventory of Garrison as additional security for Garrison's debt to Chem-Tech and that this changed and increased Heller's risk under the guaranty and resulted in the discharge of the guaranty under Georgia Code Annotated § 103-202. First, the uncontradicted facts are that Chem-Tech contended that at all times from the beginning of the Chem-Tech/Garrison relationship, Chem-Tech attempted to keep sufficient inventory in house to protect itself and against which it could exercise its right of Laundrymen's Lien. Shelby Peeples of Chem-Tech testified that this was the custom in industry from 'time immemorial' agreed to by Garrison and was known to all parties.

"Such an arrangement, would (a) not amount to a change in the guaranty, and (b) would not amount to such an act as would increase

Heller's risk. Obviously, any increase in Garrison's accounts payable, secured or unsecured, to Chem-Tech or to other creditors might serve to increase the likelihood that Heller would be called upon to honor its guaranty. Such is the nature of business, but such is not an increase in risk under the guaranty as is contemplated by Georgia Code Annotated § 103-202. Heller's risk is established by its guaranty, which contained no limit on the amount of credit which could be extended to Garrison by Chem-Tech and no limit on the amount of secured or unsecured indebtedness of Garrison to Chem-Tech or to any other creditor.

"Therefore, the extension of additional credit over the guaranty limit or the obtaining of security for the same does not effect Heller's risk under the guaranty. Likewise, for the reasons stated above, no effect contemplated by this statute is had on Heller's claim of prior lien which it either has or can enforce against Chem-Tech or which it does not have and cannot enforce. Under the language of the guaranty, Heller can simply not direct the application of payments received from the lien foreclosure or otherwise. The debtor Garrison had a right to direct the application of that payment which it did and Chem-Tech in response gave full credit to Garrison in accordance with that direction. See Georgia Code Annotated § 20-1006. See Illinois cases cited on page 255 of this opinion.

"Furthermore, Heller, as a compensated surety, is not entitled to the protection of § 103-203. *Houston General Insurance Company v. Brock Construction Company, Inc.,* 241 Ga. 460. Heller is not a member of the 'favored class' of sureties benefited by the rule of *strictissimi juris* as regards its undertaking, but is to be considered as a guarantor. See *Travelers Indemnity Company v. Sasser & Company,* 138 Ga. App. 361 (4), Georgia Code Annotated § 103-101.

"As illustrated *supra.* under Illinois law, extension of credit in excess of the guaranty amount does not increase the risk of the guarantor. Georgia law is in accord. *White v. Chapman, et al.,* 149 Ga. App. 409 at 413; *Carson v. Hurst & Company,* 137 Ga. 640; *Craton v. Brock Candy Company,* 37 Ga. App. 728; *Redfearn v. Citizens & Southern National Bank,* 122 Ga. App. 282 (2). Likewise, Chem-Tech's obtaining of other security for additional accounts not guaranteed by Heller would not increase Heller's risk under the guaranty and is permissible unless expressly prohibited by the guaranty agreement. This fact situation does not exist. *Escambia Chemical Corp. v. Rocker,* 124 Ga. App. 434 at 441. Therefore, Heller's contract of guaranty being primarily to pay the debt of another will be payable by Heller in accordance with the terms thereof, which terms were authored by Heller.

"Defendant Heller has abandoned its tenth defense and

therefore no issue is presented to this Court for decision thereon.

"Finally, Heller asserts that if the plaintiff is entitled to summary judgment, it is not entitled to interest. In support of this position, Heller relies upon *First National Bank of Atlanta, Executor v. State Highway Department,* 219 Ga. 144. Such reliance is misplaced as that case is inapposite to the facts presented here. In the cited case the Court held that it was unconstitutional to require a condemnee to pay interest to the state which resulted from a jury verdict of less than a Special Master award under which the condemnee was forced by judgment to repay a portion of a sum previously paid to the condemnee at the time of the Special Master award. The Court held in that case that it was unconstitutional for force one to (in effect) loan money to the state, and disallowed interest under Article I, Section I, Par. III of the Constitution of the State of Georgia, Georgia Code Annotated § 2-103. The situation before this Court is clearly different. In Georgia, interest is allowed on liquidated accounts, Georgia Code Annotated, § 57-110, and should be payable from the due date, to-wit: June 16, 1976.

## *ORDER*

"Accordingly, IT IS ORDERED, DECREED AND ADJUDG-ED that:

(a) Defendant Heller's Motion for Partial Summary Judgment be and is hereby *DENIED.*

(b) Plaintiff's Motion for Summary Judgment against Garrison Carpet Mills, Inc. be and is hereby *GRANTED* and that Plaintiff have and recover of Garrison Carpet Mills, Inc. the sum of $142,901.20, together with interest thereon at the rate of seven percent (7%) per annum from the 16th day of June, 1976.

(c) Plaintiff's Motion for Summary Judgment against Walter E. Heller & Company be and is hereby *GRANTED* and that plaintiff have and recover from the Defendant Walter E. Heller & Company the sum of $125,172.00, together with interest thereon at the rate of seven percent (7%) per annum from the 16th day of June, 1976, as a joint and several portion of the liability of Garrison set forth in paragraph (b) but not in addition thereto, and paragraph (d) the plaintiff have and recover of the defendants all costs of this action."

*We affirm. Banke and Carley, JJ., concur in the judgment only.*

DECIDED APRIL 9, 1981 —

*S. Phillip Heiner, Barbara S. Speck, Richard W. Bethea, Jr.,* for appellant.

*Warren N. Coppedge, Jr.,* for appellee.