A90A1931. LYNOTT v. THE STATE.
(402 SE2d 747)

SOGNIER, Chief Judge.

Jason Lynott was convicted of violating the Georgia Controlled Substances Act by selling morphine. He was sentenced to 30 years incarceration, and he appeals.

1. Construed to support the verdict, the evidence adduced at trial showed that on May 11, 1987, while working undercover, Officer Kirk Hollan of the Marietta-Cobb-Smyrna narcotics squad purchased 49 morphine pills from appellant during a meeting previously arranged by confidential informant Jimmy Scoggins, who was acting as an intermediary. Hollan testified that the type and amount of the drug and the purchase price were arranged at the prior meeting, and at the appointed time he and Scoggins met with appellant in Scoggins' car in the parking lot of a Cobb County motel. Appellant was arrested after Hollan laid the price of the morphine — $400 in cash — on his lap and appellant placed the bottle containing the pills on the car's console. We find this evidence sufficient to authorize the jury to convict appellant of violating the Georgia Controlled Substances Act, under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Wyatt v. State*, 194 Ga. App. 159, 160

(3) (390 SE2d 85) (1990).

2. Appellant contends the trial court erred by denying his request to represent himself and failing to hold a hearing on his request. While a criminal defendant has a constitutional right to waive counsel and represent himself, *Faretta v. California*, 422 U. S. 806, 834-835 (95 SC 2525, 45 LE2d 562) (1975), our careful review of appellant's requests to the trial court persuades us that although appellant expressed dissatisfaction with his final appointed counsel several times, he never stated unequivocally that he wished to represent himself. Rather, appellant's statements indicated either that he felt he was being forced to represent himself, which is unsupported by the record, or that he wished to discharge his attorney and select another or act as co-counsel with his present appointed counsel. Regardless which request appellant made, it was not constitutionally protected. See *Durham v. State*, 185 Ga. App. 163, 164 (1) (363 SE2d 607) (1987); *Cargill v. State*, 255 Ga. 616, 622-623 (3) (340 SE2d 891) (1986). Because no unequivocal assertion of appellant's right to represent himself was made, we find no merit in this enumeration.

3. Before trial, appellant had filed a pro se federal habeas corpus petition seeking dismissal of his criminal indictment on the basis that his right to a speedy trial had been violated. Appellant now asserts that it was reversible error for the trial judge in the case at bar to fail to recuse himself sua sponte on the ground he had been named as one of several respondents in the federal action. This enumeration is based on appellant's belief that comments made by the trial court during a motions hearing prior to trial indicated bias stemming from the federal action. Even assuming, without deciding, that the trial court's remarks reflected bias, we find no error in the trial court's failure to recuse. This was not an instance where any violation of the specific standards of Canon 3 (C) of the Georgia Code of Judicial Conduct occurred, which would require sua sponte disqualification. See *Pope v. State*, 257 Ga. 32, 34-35 (2) (354 SE2d 429) (1987).

Moreover, USCR 25.1 provides that "[a]ll motions to recuse or disqualify a judge presiding in a particular case or proceeding shall be in writing, accompanied by an affidavit asserting the facts upon which the motion is founded, and timely filed." See *Smith v. State*, 192 Ga. App. 18, 19 (1) (383 SE2d 600) (1989). Although appellant filed a motion and supporting affidavit some six months after his conviction, appellant argues that the remark was made outside his presence and thus determination of the timeliness of the motion must be based on the time appellant learned of the comments. However, the transcript shows that appellant's attorney heard the remarks and did not object or move for mistrial, and there is no requirement in these circumstances that the waiver be exercised personally by the accused. *Pope*, supra at 34 (2) (a). Accordingly, we find no merit in this enumeration.

Id. at 34-35 (2).

4. At a preliminary hearing approximately two years before trial, Hollan testified that he had been wearing a body bug when he met with appellant and that their conversation had been recorded, but he had not listened to the tape. At a pretrial hearing immediately before trial, Hollan stated that the tape had been erased because it was unintelligible. Appellant contends that the tape would have been exculpatory, and that the failure to preserve it was in bad faith and thus violated his right to due process under the Fifth and Fourteenth Amendments to the U. S. Constitution pursuant to *Arizona v. Youngblood*, 488 U. S. 51 (109 SC 333, 102 LE2d 281) (1988) and *California v. Trombetta*, 467 U. S. 479 (104 SC 2528, 81 LE2d 413) (1984).

At the pretrial hearing, Hollan explained that body bugs generally operate imperfectly, frequently resulting in "dead tape." Additionally, at the time of the meeting with appellant another undercover drug buy was transpiring nearby, conversation from which was also being transmitted and recorded on the same tape because the transmission was being used for the benefit of backup officers. When he reviewed the tape approximately two months after appellant's arrest, he concluded that it could not be useful because it included a great deal of competing conversation, and he could not distinguish the conversation with appellant. The officer who monitored the transmission as it was occurring testified that the transmission was garbled. After hearing evidence, the trial court found that there had been "a satisfactory explanation as to the tape, [and] therefore no rights of [appellant] have been violated by the fact that the tape was placed back in the tape pool and reused." We find no error in this ruling. See generally *Spaulding v. State*, 195 Ga. App. 420-421 (1) (394 SE2d 111) (1990). Whether bad faith had been demonstrated was a question of fact. "The trial judge [was] the trier of facts in this matter, and resolve[d] all issues of truthfulness placed before him ([cit.]); we do not disturb his finding if there is any evidence for it. [Cit.]" *Etterle v. State*, 155 Ga. App. 210 (270 SE2d 376) (1980).

5. Citing *Owens v. State*, 251 Ga. 313, 314-317 (1) (305 SE2d 102) (1983), appellant maintains the trial court erred by failing to order disclosure of the arrangements made between Scoggins and the Cobb County police for Scoggins' cooperation, in violation of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). We note initially that appellant is incorrect in his statement that his pro se motion seeking discovery of the nature of the arrangement was never ruled on by the trial court. *Owens*, supra, involved using a witness' cooperation with police for impeachment purposes. Scoggins did not testify at trial, and thus the rationale of *Owens* is inapplicable. Moreover, Scoggins' indebtedness to the police was elicited by appellant during Hollan's cross-examination. "The rule regarding the disclosure

of exculpatory material set forth in *Brady . . .* is not violated when the material in question is available to the [appellant] during trial, pre-trial disclosure of materials not being required. [Cit.]" *Burgan v. State,* 258 Ga. 512, 513 (1) (371 SE2d 854) (1988).

6. Appellant contends his trial counsel rendered ineffective assistance. Because this issue was raised in the motion for new trial brought by appellant's new counsel, and heard and considered by the trial court, we may properly review it. See *Cook v. State,* 255 Ga. 565, 578 (17) (340 SE2d 843) (1986). Having carefully considered the record in the light of appellant's arguments, and based on the standards set forth in *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), we affirm the trial court's ruling that appellant was not denied effective assistance of counsel. *Cook,* supra at 578-587 (17) (h).

7. Appellant's contention that the trial court had no jurisdiction over appellant because of the State's failure to comply with the Interstate Agreement on Detainers Act, OCGA § 42-6-20 et seq., was not raised at trial and thus may not be reviewed here. *Rios v. State,* 193 Ga. App. 485, 487 (5) (388 SE2d 527) (1989).

8. Appellant asserts that his right to a speedy trial as guaranteed by the United States and Georgia constitutions was violated. As our review of the record reveals that appellant's demand for trial was not timely filed under OCGA § 17-7-170 (a), we must examine his contention under constitutional standards. See *State v. Weeks,* 136 Ga. App. 637, 639-640 (2) (222 SE2d 117) (1975).

"In *Barker v. Wingo,* 407 U. S. 514 (92 SC 2182, 33 LE2d 101) [(1972)], the Supreme Court of the United States identified four factors which it stated the court should weigh in balancing the conduct of the prosecution and the defendant on the issue of the denial of the constitutional right to a speedy trial. These four factors are: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant." *Weeks,* supra at 639. In the case at bar, although the delay was approximately 22 months, much of that is attributable to appellant's hiring and discharging four different counsel prior to the final appointment. Appellant did not assert his demand for trial until almost a year after indictment, and trial commenced ten months thereafter.

In considering the possible prejudice to appellant, we must assess the circumstances in light of the interests of the defendant protected by his right to a speedy trial, including the prevention of oppressive pretrial incarceration, minimization of the accused's anxiety and concern, and limitation of the possibility of impairment of his defense. *Weeks,* supra at 640 (4). In this case, appellant was released on bond, and his incarceration thereafter was on unrelated federal charges. Although appellant may well have been anxious, there is no evidence

that the State intentionally delayed trial. The destruction of the tape discussed in Division 4, supra, was not a result of the passage of time. It occurred prior to appellant's assertion of his right to a speedy trial, and no evidence exists that it was destroyed in bad faith. Appellant alleges that the loss of his address book resulted in his inability to call a certain witness, but has not shown that the address book actually existed or that he could not have located the witness in other ways. Moreover, we find no relation between the disappearance of the address book and the delay before trial. Balancing these factors, we find that appellant was not unduly prejudiced by the delay, and his constitutional right to a speedy trial was not violated. See generally *Layson v. State*, 188 Ga. App. 815, 816-817 (3) (374 SE2d 556) (1988).

*Judgment affirmed. McMurray, P. J., and Carley, J., concur.*

DECIDED FEBRUARY 6, 1991 —
REHEARING DENIED FEBRUARY 25, 1991 —

*Frank J. Petrella*, for appellant.

*Thomas J. Charron*, District Attorney, *Barry E. Morgan, Debra H. Bernes, Nancy I. Jordan*, Assistant District Attorneys, for appellee.