S99A0495. RUSHING v. THE STATE.
(515 SE2d 607)

BENHAM, Chief Justice.

This appeal is from Sredrick Rushing's conviction for malice murder.[1] The evidence presented at trial authorized the following to be found as facts. Rushing and the victim, Saronda West, were both detention officers employed at the DeKalb County Jail, and had been engaged in an affair for approximately a year at the time of her death. West had decided, however, to reconcile with her husband and was breaking up with Rushing. They had an argument at work on September 8, 1997, lasting at least an hour and witnessed by others. After work on September 10, just after 8:00 a.m., they were seen talking beside West's car in the jail parking lot. She did not return home from work that day, and when Rushing was contacted by her family, he said he had not seen her since their shift ended, claiming he had worked overtime. Rushing bought a new mattress that day, arranged for it to be delivered that day, and had the old mattress, the cover of which had been cut off, removed by the delivery personnel. A maintenance person at Rushing's apartment complex told investiga-

---

[1] The crime was committed on September 10, 1997; Rushing was arrested on September 13; and he was indicted for malice murder and felony murder (aggravated assault) on October 9, 1997. A trial conducted June 11 & 15-17, 1998, resulted in verdicts of guilty on both counts. The trial court sentenced Rushing to life imprisonment for malice murder and ordered the felony murder count merged into the malice murder count. Rushing's motion for new trial, filed July 17, 1998, was denied October 26, 1998, and his notice of appeal was filed November 16, 1998. The appeal was docketed in this Court on December 20, 1998, and was submitted for decision without oral argument.

tors that he had seen West's car and Rushing's in front of Rushing's apartment on the day of West's death. The police first interviewed Rushing about West's absence the next day, at which time he claimed to have gone home and to bed when his shift ended. A consent search of his apartment revealed nothing inculpatory, but a can of carpet cleaner was seen on the kitchen counter. He told a friend that day that he had seen a letter in which West's husband threatened to harm her and Rushing if he caught them together. West's car was found in a MARTA parking lot the next day with West's body in the trunk, wrapped in sheets and a comforter belonging to Rushing. She had died of a single gunshot to the head from a .45 caliber pistol. The lack of gunpowder residue around the wound indicated that the gun was far enough from her when fired to make it virtually impossible that she shot herself. Rushing, questioned again in a voluntary interview at police headquarters, contradicted his first story about going home after his shift, and claimed instead to have requested overtime, but stayed in the locker room at the jail till 11:00 a.m. He said he owned a .45 caliber pistol which was kept in West's car. Two search warrants for Rushing's apartment were obtained and executed. The first revealed ammunition for the missing pistol and red stains on the wall and a kitchen cabinet. The second search unearthed a radio belonging to the Sheriff's Department and issued to Rushing, though he was not authorized to have it at home. Rushing was arrested the day of the second search for theft by receiving and for making false statements. Following an interview lasting approximately 11 hours, Rushing made a statement in which he claimed that he came home from work to find West in his apartment holding his gun; that he asked her for the gun and reached for it; and that it went off and she fell to the bed, whereupon he panicked, wrapped her up, disposed of her body, and took other steps to hide her death, including dismantling the gun and discarding the pieces. He led police officers to the place he had hidden the frame of the weapon. At trial, a similar transaction witness testified that during her relationship with Rushing, he would sometimes point a gun at her head or put a pillow over her head and point a gun at her through the pillow. That witness testified that Rushing asked her to lie for him at this trial. Rushing testified at trial that he arrived home to find West already dead, then disposed of her body. He disavowed his earlier statement as having been what the interrogating officers wanted him to say.

1. In the first of two enumerations of error, Rushing asserts that the trial court erred in denying his motion to suppress and in admitting into evidence items seized during the searches of his apartment. The basis for his argument is his contention that the warrants were invalid because the affidavits on which they were based were insufficient to establish probable cause to believe that evidence of crime

would be found in his apartment.

The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed (*Bromley v. State*, 259 Ga. 377 (3) (380 SE2d 694) (1989)), and a reviewing court will pay substantial deference to a search warrant finding probable cause issued by a magistrate. *McClain v. State*, 267 Ga. 378 (11) (477 SE2d 814) (1996). Our standard of review of the trial court's decision is the "clearly erroneous" standard. *Bryant v. State*, 268 Ga. 616 (6) (491 SE2d 320) (1997).

The information available to the magistrate in the present case may be summarized as follows. West did not appear at home after work on September 10, and was found dead in the trunk of her car at West Lake MARTA station two days later. She had been having an affair with Rushing, but West's mother told the police that West was breaking off her affair and returning to her husband. Rushing opposed that decision and had threatened to harm himself if she left. He called West's pager often and called her at home so often that she had his calls blocked there. On her last day at work, she had an argument with Rushing lasting more than an hour. Rushing claimed not to have seen West after work on her last day on the job, telling West's mother that he had worked overtime, but telling the police he had planned to work overtime, but had changed his mind and gone home. Confronted with inconsistencies in his story about the time he left work, Rushing said he had hidden in the locker room for almost three hours before going home. A gun belonging to Rushing, which he claimed was kept by West in her car, was not there when her body was found. A detective interviewing Rushing at home noted a container of carpet cleaner on the kitchen counter.

From the facts that Rushing and West were in conflict over their relationship, that he was evasive and inconsistent regarding his whereabouts in the hours following the last time anyone other than Rushing saw her alive, that a gun belonging to Rushing and associated with West was missing, and that Rushing had been cleaning his carpet, it could be inferred that Rushing and West argued and that he killed her with the missing gun. The further inference that evidence of that crime might be in Rushing's apartment is a fair presumption which will support a finding of probable cause. See *McClain*, supra. We conclude, therefore, that the trial court's finding that the search warrants were supported by evidence sufficient to establish probable cause was not clearly erroneous. Accordingly, there was no error in denying Rushing's motion to suppress evidence seized in the searches.

2. In Rushing's second enumeration of error, he argues that the custodial statement in which Rushing admitted shooting West should have been excluded because it was tainted by illegal searches

which led to his arrest for theft by receiving, and then to custodial interrogation. His contention that the arrest for theft by receiving was tainted depends entirely on the validity of his first enumeration of error. Since we held in the preceding division of this opinion that his first enumeration of error was not meritorious, his second enumeration is likewise without merit. Although Rushing argues in his brief that his statement should also be suppressed as the result of an illegal arrest for making false statements, that ground for suppression of the statements was not presented to or ruled upon by the trial court and was, therefore, waived. *Hardeman v. State*, 252 Ga. 286 (2) (313 SE2d 95) (1984).

3. The evidence adduced at trial and summarized herein, though circumstantial, was sufficient to authorize a rational trier of fact to find Rushing guilty beyond a reasonable doubt of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). A conviction based on circumstantial evidence is authorized when every reasonable inference and hypothesis except that of guilt is excluded by the evidence. *Brown v. State*, 260 Ga. 153 (1) (391 SE2d 108) (1990). When the evidence presented by the State in this case is viewed in the light most favorable to the jury's verdict, the jury could have found that every reasonable hypothesis except Rushing's guilt was excluded. *Mullins v. State*, 269 Ga. 157 (1) (496 SE2d 252) (1998).

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 17, 1999.

*August F. Siemon,* for appellant.

*J. Tom Morgan, District Attorney, Robert M. Coker, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Angelica M. Woo, Assistant Attorney General,* for appellee.