## A00A0073. THE STATE v. BLACKWELL.

(537 SE2d 457)

RUFFIN, Judge.

The trial court dismissed drug possession charges against John Blackwell after the State intentionally destroyed Blackwell's urine sample. The State Crime Lab's positive test results on the sample were the only evidence of Blackwell's guilt; the sample had initially tested negative for drugs in a field test; and there was an existing court order allowing Blackwell to independently test the sample. Under these circumstances, the trial court concluded that allowing the State to prosecute Blackwell would be "fundamentally unfair." The State appeals. We agree with the trial court and affirm.

The record shows that, on March 9, 1997, Blackwell was cited for DUI and weaving on the road. Three days later, Blackwell's probation officer tested his urine for drugs using a kit issued by the State. The test was negative. Nevertheless, an agent from the Appalachian Drug Task Force sent Blackwell's urine — the same sample — to the State Crime Lab, which tested it again. This time, the urine tested positive for amphetamine and methamphetamine. Blackwell was indicted for possession of amphetamine and methamphetamine, as well as DUI and weaving on the road.

Shortly after his arraignment, Blackwell filed a motion to permit an independent laboratory analysis of his urine sample. The prosecutor consented to the motion, and, in an order dated March 26, 1998, the trial court granted it. The order provided that Blackwell's "attorney, or his representative, shall call [the State Crime Lab] in advance to set an appointment to view the evidence."

According to Blackwell's attorney, the prosecutor called the State Crime Lab to inform them that defense counsel would be bringing an expert to analyze the urine, but the prosecutor was told that the crime lab did not keep urine specimens for more than one year. The record does not show when this call took place. In a letter dated April 28, 1998, the prosecutor wrote to Blackwell's counsel that an employee from the crime lab "called this morning and confirmed that the urine has been destroyed, pursuant to their policy of destroying

urine after 12 months."

At the hearing on Blackwell's motion to dismiss, however, the prosecutor stated that the crime lab had recently confirmed that it did not actually destroy the urine until May 5 or 15, 1998. Blackwell's attorney argued that allowing the State to present evidence of the crime lab's positive test result would violate "fundamental fairness." The prosecutor suggested that Blackwell could have tested the urine during the month and a half period between the entry of the consent order and the destruction of the sample. Without specifically ruling on that argument, the trial court concluded that it was "fundamentally unfair" for the State to destroy the evidence *after* the entry of its order, and it dismissed the drug charges in the indictment.

1. On appeal, the State argues that Blackwell waived his right to independent testing by waiting too long after the entry of the consent order to procure such testing. We do not agree.

The State relies upon *Norley v. State*,[1] in which the defendant moved for an independent analysis of a substance that the State Crime Lab had determined to be cocaine. The trial court entered an order granting the motion and giving the defendant approximately one month to conduct the analysis. The defendant failed to conduct the analysis within that time, and the crime lab destroyed the evidence three or four months later. On those facts, we held that the defendant waived his right to independent analysis by "not timely utilizing the court-ordered opportunity to conduct the testing."[2]

This case is considerably different. First, unlike in *Norley*, the trial court's order did not set a specific time for Blackwell to complete the independent analysis. Second, the record shows that Blackwell took steps to accomplish the analysis within one month of the trial court's order. The trial court's order is dated March 26, 1998. The prosecutor called the State Crime Lab on Blackwell's behalf to arrange for independent testing. Although the record does not show when this call occurred, the prosecutor's April 28 letter to Blackwell's attorney states that the crime lab had *confirmed* the destruction of the sample, implying that the first contact with the lab occurred before April 28. Thus, Blackwell — or the prosecutor acting on his behalf — acted within one month of the trial court's order. Under these circumstances, we cannot conclude that Blackwell waived his right to an independent test.[3]

---

[1] 170 Ga. App. 249, 252 (4) (316 SE2d 808) (1984).

[2] Id.

[3] Citing *Patterson v. State*, 238 Ga. 204 (232 SE2d 233) (1977), the dissenting opinion by Presiding Judge Andrews suggests that Blackwell's motion for independent analysis was untimely in the first place. *Patterson* holds that a trial court may deny a request for independent analysis if the request is untimely or unreasonable. But the timeliness of Blackwell's request — to which the prosecutor consented — is not before us. The State's argument on

2. Even though Blackwell did not waive his right to an independent test, the trial court lacked authority to dismiss the drug charges in the indictment unless prosecution would violate Blackwell's constitutional rights.[4] The trial court concluded that prosecution would result in a due process violation, and we uphold that ruling.

(a) First, we address the assertion of the dissenting opinion by Presiding Judge Andrews that the issue of due process was not raised in the trial court. The due process clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."[5] Under this clause, "criminal prosecutions must comport with prevailing notions of *fundamental fairness*."[6] The United States Supreme Court has long held that fundamental fairness "require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense," including the right of access to exculpatory evidence.[7]

At the hearing on Blackwell's motion to dismiss, Blackwell's counsel argued to the trial court that allowing the State to present evidence of the crime lab's test result would violate "fundamental fairness," and the trial court agreed. Although the trial court did not specifically mention the due process clause, the court repeatedly referred to the State's destruction of the urine sample as "fundamentally unfair," which is the gravamen of a due process violation.[8] And the court gave no other basis for its ruling. Thus, it seems clear that Blackwell's motion and the trial court's ruling were based on constitutional due process, even if those words were not used. There should be no sophisticated way to say "due process" or whatever is fundamentally fair.[9] Thus, we may properly consider the constitutional issue here.

(b) "The practice of destroying evidence without prior notice to the accused has been soundly denounced."[10] The State has a constitutional obligation to preserve "evidence that might be expected to play

---

appeal is that Blackwell waived his right to an independent analysis by not acting more promptly *after* the entry of the consent order.

[4] See *State v. Luttrell*, 207 Ga. App. 116 (427 SE2d 95) (1993) (" 'the court knows of no statutory or case authority which permits [dismissals with prejudice] in *criminal* cases' ").

[5] U. S. Const., Amend. 14, Sec. 1.

[6] (Emphasis supplied.) *California v. Trombetta*, 467 U. S. 479, 485 (104 SC 2528, 81 LE2d 413) (1984).

[7] Id.

[8] See, e.g., *Bearden v. Georgia*, 461 U. S. 661, 666 (103 SC 2064, 76 LE2d 221) (1983).

[9] We have repeatedly held, in a variety of contexts, that "[t]here is no magic in mere nomenclature, and the inquiry of the Court is always directed to substance and not to form." (Punctuation omitted.) *W. E. Heller & Co. v. Aetna Business Credit*, 158 Ga. App. 249, 257 (280 SE2d 144) (1981).

[10] (Punctuation omitted.) *Rogers v. State*, 224 Ga. App. 359, 360 (2) (480 SE2d 368) (1997).

a significant role in the suspect's defense."[11] Accordingly, our Supreme Court has recognized that "[w]here the defendant's conviction or acquittal is dependent upon the identification of [a] substance as contraband, due process of law requires that analysis of the substance not be left completely within the province of the state."[12] In *California v. Trombetta*, the United States Supreme Court held that the State violates a defendant's right to due process when it destroys evidence that has "constitutional materiality" — i.e., evidence that (1) has "an exculpatory value that was apparent before the evidence was destroyed" and (2) is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."[13]

In *Trombetta*, the defendants, who were prosecuted for drunk driving, challenged the destruction of their breath samples after tests performed by the State using an Intoxilyzer machine showed that the samples contained alcohol. The defendants claimed that "had a breath sample been preserved, [they] would have been able to impeach the incriminating Intoxilyzer results."[14] The Court found no due process violation, however, because the possibility that an independent test of the breath samples would have exculpated the defendants was "extremely low" and because there was evidence that the defendants could have impeached the Intoxilyzer results by other means.[15]

This case differs markedly from *Trombetta*, and both prongs of the two-part test announced in *Trombetta* are satisfied here. First, Blackwell's urine sample had an exculpatory value that was apparent before its destruction. "Exculpatory" means "supportive of a claim of innocence"[16] or "tending to clear from alleged fault or guilt."[17] Here, the *very same urine sample* that the State destroyed had previously tested negative for drugs in a State-administered field test. Because the results of the field test tended to show Blackwell's innocence of the drug charges, the urine had obvious exculpatory value that was apparent before the State destroyed it. Moreover, unlike in *Trombetta*, Blackwell had specifically sought an independent analysis of the urine sample, and the court had granted that motion before the urine was destroyed. Thus, the State was clearly on notice that the urine was "expected to play a significant role in [Blackwell's]

---

[11] *Trombetta*, supra at 488.
[12] *Patterson*, supra at 206.
[13] *Trombetta*, supra at 489.
[14] Id. at 483.
[15] Id. at 489-490.
[16] (Punctuation omitted.) *Tribble v. State*, 248 Ga. 274, 275 (1) (280 SE2d 352) (1981).
[17] Black's Law Dictionary (5th ed.).

defense."[18]

The second prong of the *Trombetta* test — a showing that Blackwell is unable to obtain comparable evidence by reasonably available means — is also satisfied. Obviously, Blackwell cannot replicate the destroyed sample. Blackwell could impeach the State Crime Lab's test result by introducing the contrary result from the probation officer's initial test of the urine. But, as the Supreme Court of Illinois said in *People v. Newberry*,[19] the relief offered by evidence of a conflicting field test is "illusory":

> Whatever the actual reliability of the tests performed in the lab . . . the laboratory analysis of the evidence will carry great weight with the jury, and the jury will undoubtedly give such an analysis more deference than the initial field test procedures, which are inherently less precise and controlled.[20]

As in *Newberry*, Blackwell has no "realistic hope of exonerating himself absent the opportunity to have [the evidence] examined by his own experts."[21] By destroying the sample, the State destroyed Blackwell's ability to meet the prosecution's proof with evidence of like quality.[22]

In short, the State destroyed Blackwell's urine despite its known exculpatory value (the previous negative test) and despite the court order granting Blackwell access to it. Blackwell has no comparable evidence. Accordingly, the State violated Blackwell's due process rights under *Trombetta*, and the trial court properly dismissed the drug charges in the indictment.[23]

(c) Four years after *Trombetta*, the United States Supreme Court decided *Arizona v. Youngblood*,[24] another case addressing the State's obligation to preserve evidence. In *Youngblood*, the issue was whether the State properly preserved semen samples of the perpetrator in a sexual molestation case. The State allegedly allowed the evidence to deteriorate before testing it, so the test results were inconclusive. The evidence was made available to the defendant, who

---

[18] *Trombetta*, supra at 488.

[19] 166 Ill.2d 310 (652 NE2d 288) (1995).

[20] (Citations omitted.) Id. at 292.

[21] Id. at 291.

[22] See *Sisson v. State*, 181 Ga. App. 784, 788 (353 SE2d 836) (1987) (recognizing that independent analysis is " 'the only means by which the defendant can defend against expert testimony by the State' ").

[23] *Trombetta*, supra at 487 ("when evidence has been destroyed in violation of the Constitution, the court must choose between barring further prosecution or suppressing . . . the State's most probative evidence").

[24] 488 U. S. 51 (109 SC 333, 102 LE2d 281) (1988).

declined to test it himself, and the State did not use the test results against the defendant at trial. Nevertheless, the defendant argued that if the State had properly preserved the evidence, it might have exonerated him.

On these facts, the Court concluded that the exculpatory value of the semen evidence was not known to the State when the State allegedly mishandled it. Rather, "this evidence was simply an avenue of investigation that might have led in any number of directions."[25] The evidence did not meet the standard announced in *Trombetta* because "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant."[26] Accordingly, the Court held that the State's failure to preserve evidence that is only *"potentially useful"*[27] does not violate due process unless the defendant can show that the State acted in bad faith. The bad faith requirement avoids "imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution."[28]

Although Georgia courts have not squarely addressed this issue,[29] numerous courts from other jurisdictions have concluded that *Youngblood*'s bad faith requirement does not apply where — as here — the exculpatory value of the evidence was apparent before its destruction, and there is no reasonably available comparable evidence.[30] In other words, only if the two requirements of *Trombetta* are not met does the good or bad faith of the State become relevant.

---

[25] Id. at 56, n. *.

[26] Id. at 57.

[27] (Emphasis supplied.) Id. at 58.

[28] Id.

[29] Citing *Smith v. State*, 270 Ga. 68, 71 (6) (508 SE2d 145) (1998), the dissents suggest that it is settled under Georgia law that bad faith must be shown in every failure-to-preserve case. We do not agree. *Smith* states only that "the destruction of *potentially* exculpatory evidence does not violate due process unless the police acted in bad faith in failing to preserve the evidence." (Emphasis supplied.) Id. Neither *Smith* nor any other Georgia case addresses the issue of the State's failure to preserve evidence whose exculpatory value was *apparent* — as opposed to simply potential — before the State destroyed it.

[30] See, e.g., *United States v. Bohl*, 25 F3d 904, 910 (10th Cir. 1994) (bad faith requirement applies where "the exculpatory value of the evidence is indeterminate and all that can be confirmed is that the evidence was 'potentially useful' for the defense"); *Lila v. McKune*, 45 FSupp.2d 1157, 1163 (D. Kan. 1999) (noting that more stringent analysis applies if evidence is only "potentially useful" to the defendant); *State v. Greenwold*, 189 Wis.2d 59 (525 NW2d 294, 297) (Wis. App. 1994) ("the *Youngblood* analysis suggests that if the materiality of the evidence rises above being potentially useful to clearly exculpatory, a bad faith analysis need not be evoked"); *United States v. Belcher*, 762 FSupp. 666, 672 (W.D. Va. 1991) (*Youngblood*'s bad faith requirement does not apply where "the destroyed evidence at issue is absolutely crucial and determinative to this prosecution's outcome"); *People v. Eagen*, 892 P2d 426, 428 (Colo. App. 1994) (*Youngblood* applies only when "the exculpatory value of the evidence does not satisfy the *Trombetta* standard"); *Newberry*, supra at 291 (no bad faith showing required where destroyed evidence "is more than just 'potentially useful' ").

As discussed above, Blackwell's urine sample was not "simply an avenue of investigation that might have led in any number of directions," as was the case in *Youngblood*. It was not merely "potentially useful." Rather, it was the sole basis for the prosecution of Blackwell, and the results of the tests performed on it were "essential to and determinative of the outcome of the case."[31] Most importantly, the exculpatory value of the urine was obvious before it was destroyed because the State had previously tested it and found no evidence of drugs. *Youngblood* does not apply here, and Blackwell did not have to show that the State acted in bad faith.

(d) But even if Blackwell did have to show bad faith, the trial court implicitly found bad faith here based on the State's disregard of its discovery order, and the record supports that finding.

In *Youngblood*, the Court asserted that "[t]he presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed."[32] A finding of bad faith is reserved for "those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant."[33] Because the presence or absence of bad faith depends on the facts of a particular case, this Court will accept a trial court's determination as to whether the State acted in bad faith if there is any evidence to support it.[34] Although the trial court did not explicitly use the phrase "bad faith," the transcript from the hearing on Blackwell's motion to dismiss shows that the court believed the State violated an obligation to preserve the evidence until Blackwell could analyze it in accordance with the court order.

According to the prosecutor, the evidence was not destroyed until May 5 or 15. The trial court believed the prosecutor and accepted this date, as it was entitled to do.[35] Therefore, the evidence

---

[31] *Newberry*, supra at 291. The facts of *Newberry* are similar to those here. Police seized from Newberry a substance they believed to be cocaine. A field test was negative for the drug, but a subsequent laboratory test was positive. Newberry's lawyer filed a motion to examine all objects seized from Newberry. After the motion was filed, an evidence technician inadvertently destroyed the substance. The trial court granted defense counsel's motion to dismiss the indictment, and the Illinois Supreme Court upheld that ruling, rejecting the State's argument that Newberry had to show bad faith to prove a due process violation. See also *Ex parte Gingo*, 605 S2d 1237 (Ala. 1992) (where federal government destroyed samples of alleged hazardous waste through no fault of state after order permitting discovery of the materials, it was "fundamentally unfair" to allow State to use results of tests performed on samples in criminal environmental prosecution).

[32] *Youngblood*, supra at 56, n. *.

[33] Id. at 58.

[34] See *Milton v. State*, 232 Ga. App. 672, 679 (6) (503 SE2d 566) (1998).

[35] See *Ga. Bldg. Svcs. v. Perry*, 193 Ga. App. 288, 299-300 (6) (387 SE2d 898) (1989) ("It has long been the law that where counsel make statements in their place, they may be

was destroyed not only without notice to Blackwell, but *after* Blackwell had specifically sought an independent analysis, *after* a court order was in place permitting such an analysis, *after* the crime lab was notified that Blackwell wanted the evidence, and *after* the State represented to Blackwell that the sample was unavailable. The questionable timing of the destruction suggests bad faith on the part of the State.

We conclude that the State's intentional destruction of critical evidence without notice to a defendant in the face of a court order allowing the defendant access to that evidence can amount to bad faith.[36] So, even though Blackwell was not required to make that showing, the evidence here supports it.

Accordingly, we affirm the trial court's judgment.

*Judgment affirmed. Blackburn, P. J., Barnes, Ellington and Mikell, JJ., concur. Andrews, P. J., and Eldridge, J., dissent.*

ANDREWS, Presiding Judge, dissenting.

I must respectfully dissent because the majority has, in essence, created a complex federal constitutional argument for Blackwell, assumed and speculated about facts not proven below to analyze it on Blackwell's behalf, and then ruled in his favor on it, even though the trial court did not. The majority concludes that the State violated his Fifth Amendment due process rights because the Crime Lab,[37] in the normal course of its business and without Blackwell having availed himself of testing the urine as provided in the consent order for such testing, destroyed the urine after 12 months.

Pursuant to *Patterson v. State*, 238 Ga. 204 (232 SE2d 233) (1977), an accused charged with possession or sale of a prohibited substance is entitled to have an independent examination of the substance made. That right, however, is not absolute. The demand must be timely, the request must be reasonable, and the trial court may, as

---

received without verification *unless the same is required by the opposing party at the time.*") (punctuation omitted; emphasis in original). In addition, the prosecutor was an agent of the State who was communicating with the crime lab to arrange for independent testing. Contrary to the assertion of the dissent, the trial court could — and did — rely on the prosecutor's representations concerning actions taken by the State.

[36] Compare *Smith v. State*, supra (no bad faith where substance found under defendant's fingernail was consumed during initial testing process and State's expert testified that she knew "that there was a possibility of consuming the sample, but that she could not tell what the probability was"); *Lynott v. State*, 198 Ga. App. 688, 690 (4) (402 SE2d 747) (1991) (no bad faith where police destroyed tape recording of meeting with defendant because it was unintelligible); *Walker v. State*, 264 Ga. 676, 681 (3) (449 SE2d 845) (1994) ("careless, shoddy and unprofessional investigatory procedures" which resulted in failure to preserve potentially relevant evidence did not amount to bad faith). In none of these cases was critical evidence destroyed *after* a court had ordered that the defendant have access to it.

[37] The Crime Lab, contained within the Division of Forensic Sciences, has no law enforcement authority. *Jackson v. State*, 208 Ga. App. 391, 394 (430 SE2d 781) (1993).

a matter of discretion, refuse to permit such an examination. Id. at 206. In *Patterson,* the demand was not made until nearly four years after Patterson's arrest and shortly before his trial. Two months before the request, the marijuana had been destroyed by the State Crime Laboratory. There, the demand was found untimely, and there was no impediment to prosecution.

Even destruction of the entire seized material during testing by the State will not preclude prosecution and admission of the State's test results. In *Partain v. State,* 238 Ga. 207, 208 (232 SE2d 46) (1977), it was concluded that a request for independent testing when the substance had been used up was unreasonable because an independent test was impossible.

Further, "even the destruction of potentially exculpatory evidence does not violate due process unless the police acted in bad faith in failing to preserve the evidence. [Cits.]" *Smith v. State,* 270 Ga. 68, 71 (6) (508 SE2d 145) (1998). No such showing was made in this case, and the granting of the motion to dismiss on this basis was error. *Smith* involved a due process argument, made and ruled upon below, but is relegated to a footnote reference by the majority indicating that no bad faith was shown there and there was not enough sample for two tests. No "bad faith" by the State is shown on the record here either, nor was any specifically found by the trial court. The majority sidesteps this, apparently by imposing an affirmative obligation on the State to assure that the accused avails himself of his discovery opportunity once an order is entered. Under OCGA § 17-16-4 (3), our criminal discovery statute, that responsibility is the defendant's. *Norley v. State,* 170 Ga. App. 249, 252 (4) (316 SE2d 808) (1984).

*Smith* also involved, not a motion to dismiss precluding further prosecution by the State as is being done here, but a motion in limine seeking exclusion of the State's test results in any such prosecution.

The order allowing the independent analysis had been in effect for approximately a month before the urine was destroyed, and

> [Blackwell] had not sought to have any independent analysis conducted by the date of this destruction. Under these circumstances, by not timely utilizing the court-ordered opportunity to conduct the testing, [Blackwell] waived any right to the independent analysis.

*Norley v. State,* supra.

While the majority has ruled based upon an extensive discussion of Supreme Court decisions involving the Fifth Amendment to the Federal Constitution, this argument was not contained in Blackwell's written motion to dismiss. In his oral argument before the judge, Blackwell's counsel stated merely that "[w]e think it's inherently

unfair and would be volitive [sic] of fundamental fairness to allow that test to come in now. . . ." This Court has repeatedly held that, in order to raise an issue of violation of constitutional protections, one must specify which constitution (state or federal) and which provision thereof one is relying upon. See *Hall v. State*, 200 Ga. App. 585 (1) (409 SE2d 221) (1991); *Lee v. State*, 166 Ga. App. 485 (1) (304 SE2d 446) (1983). That was not done here.

Nor was the issue specifically ruled upon by the trial judge. During the hearing, the trial judge stated that the destruction of the urine before Blackwell took steps to have it tested was "fundamentally unfair." There is no ground for the dismissal given in the written order filed, merely the statement that Blackwell's motion was granted.[38]

Grounds not presented to or specifically ruled upon by the trial court are waived and not generally considered by this Court. *Rushing v. State*, 271 Ga. 102, 104-105 (2) (515 SE2d 607) (1999); *O'Hannon v. State*, 240 Ga. App. 706, 709 (2) (524 SE2d 759) (1999); *Brantley v. State*, 226 Ga. App. 872, 873 (1) (487 SE2d 412) (1997).

Also, as reflected by the majority, it is unclear what actually happened regarding the destruction of the sample. No witness from the lab was called by Blackwell in support of his motion to dismiss. The only "evidence" in the record is the April 28 letter from the prosecutor to Blackwell's counsel, repeating a statement made by telephone to the prosecutor by an unidentified lab employee regarding the sample's destruction and statements made by the prosecutor during the hearing, also relating telephone conversations with other unidentified lab employees. Such statements are hearsay and prove nothing. *In re Phillips*, 225 Ga. App. 478, 481 (2) (484 SE2d 254) (1997); see *Wellons v. State*, 266 Ga. 77, 88 (18) (463 SE2d 868) (1995).

The trial court, under the unique factual and procedural posture of this case, in my opinion, abused its discretion in dismissing the indictment.

ELDRIDGE, Judge, dissenting.

I believe that the best course would be to vacate the judgment and remand this case for further findings of fact and conclusions of law. My reasons flow from consideration of the content of the majority opinion.

Because of the failure to preserve Blackwell's urine sample, the

---

[38] The reference to *Smith v. State*, supra, was made as persuasive authority on the issue here. In *Smith*, due process was argued and ruled upon. The Supreme Court held that, even when *exculpatory evidence* had been destroyed, where there had been no showing of bad faith by police, no due process violation had occurred.

trial court dismissed the State's indictment. The majority favors this remedy because it seems unfair that Blackwell did not get a chance to independently test his urine sample when: the trial court issued an order saying he could, a prior field test showed negative for drugs, and a subsequent positive test is the basis for his prosecution. Understandable. I do not agree.[39] But it is understandable. In my view, however, the law does not support dismissing the State's indictment for the following reasons:

1. While OCGA § 17-16-6 gives a trial judge discretion to fashion a remedy for a violation of the discovery statute, a dismissal with prejudice of a criminal indictment is not a matter of a trial court's discretion. A dismissal with prejudice of a criminal indictment interferes with the State's right to prosecute and "have its case against [the defendant] determined on the merits." *State v. Owens*, 189 Ga. App. 308, 310 (375 SE2d 656) (1988).

> The Civil Practice Act (OCGA § 9-11-41 (b)) provides for dismissals with prejudice of *civil* cases, but the court knows of no statutory or case authority which permits such dismissals in *criminal* cases. (Emphasis in original.) *State v. Cooperman*, 147 Ga. App. 556, 558 (2) (249 SE2d 358) (1978). See also special concurrence in *State v. Owens*, [supra at 310].

(Punctuation omitted; emphasis in original.) *State v. Luttrell*, 207 Ga. App. 116 (427 SE2d 95) (1993).

Thus, in order to deny the State its right to prosecute on the indictment because of the failure to preserve evidence, such failure must amount to a constitutional due process violation. *California v. Trombetta*, 467 U. S. 479, 488-489 (104 SC 2528, 81 LE2d 413) (1984) ("*Trombetta*"); *Arizona v. Youngblood*, 488 U. S. 51, 58 (109 SC 333, 102 LE2d 281) (1988) ("*Youngblood*").

Here, the trial judge dismissed the indictment because he incorrectly determined that the District Attorney (DA), not Blackwell, had a duty to take the court's order to the crime lab to prevent destruction of the sample:

> Let me ask you, whose responsibility is it to take a court

---

[39] Blackwell could have sought testing for nine months following his indictment. He did not. Depending on whom you believe, he could have sought testing for one month after the court's order was entered. He did not. The crime lab keeps tested urine samples for 12 months and then destroys them. This is their policy. There is nothing "fundamentally unfair" about it. The correctness of this policy does not turn on the facts of any one particular case. The law permits the crime lab to promulgate such rules and requires prosecutors and defendants alike to work within them.

> order to your client — I mean, your witness [crime lab]? Isn't it your responsibility to get them there, Mr. Wilbanks [DA]? . . . [I]t's your responsibility to tell them there's going to be an independent. . . . I think the State's got a burden once that order's entered.

In fact, a DA has no such burden under OCGA § 17-16-4 (3).[40] And even if the DA had such duty, dismissal of the indictment is not an appropriate remedy.

2. Presumably on a right for any reason ground, the majority would affirm dismissal of the State's indictment on constitutional due process grounds. However:

(a) The majority holds that Georgia courts "have not squarely addressed" the issue of the "bad faith" requirement in cases such as this one where the State failed to preserve disclosed evidence. This is incorrect. The Supreme Court of Georgia has "squarely" held that, "In dealing with the failure of the state to preserve evidence which might have exonerated the defendant, a court must determine *both* whether the evidence was material and whether the police acted in bad faith in failing to preserve the evidence." (Emphasis supplied.) *Walker v. State*, 264 Ga. 676, 680 (3) (449 SE2d 845) (1994); *Terrell v. State*, 271 Ga. 783, 787 (6) (523 SE2d 294) (1999); *Smith v. State*, 270 Ga. 68, 71 (6) (508 SE2d 145) (1998). This Court has repeatedly followed the Supreme Court's two-prong analysis.[41]

The majority now advocates a new approach which would abolish the longstanding requirement that both "constitutional materiality" AND "bad faith" be shown in failure-to-preserve cases. The majority contends that the raft of cases which have established the two-prong requirement of (A) constitutional materiality and (B) bad faith are not applicable here because "those cases did not involve evidence whose exculpatory value was apparent before its destruction." But even assuming arguendo that the exculpatory value of

---

[40] Evidence that is within the possession, custody, or control of the Forensic Sciences Division of the Georgia Bureau of Investigation or other laboratory for the purpose of testing and analysis may be examined, tested, and analyzed at the facility where the evidence is being held pursuant to reasonable rules and regulations adopted by the Forensic Sciences Division of the Georgia Bureau of Investigation or the laboratory where the evidence is being held.
OCGA § 17-16-4 (3).

[41] *Milton v. State*, 232 Ga. App. 672, 678-679 (6) (503 SE2d 566) (1998) ("In dealing with the failure of the state to preserve evidence which might have exonerated the defendant, a court must determine *both* whether the evidence was material and whether the police acted in bad faith in failing to preserve the evidence.") (punctuation omitted; emphasis supplied). Accord *Pickens v. State*, 225 Ga. App. 792, 799 (5) (484 SE2d 731) (1997); *Nichols v. State*, 221 Ga. App. 600, 603 (6) (473 SE2d 491) (1996); *Brantley v. State*, 199 Ga. App. 623, 624 (1) (405 SE2d 533) (1991); *Lynott v. State*, 198 Ga. App. 688, 690 (402 SE2d 747) (1991).

Blackwell's sample was shown, the establishment of exculpatory value before destruction *is* prong A, constitutional materiality "to satisfy the standard of constitutional materiality in *Trombetta* . . . the exculpatory value of the evidence must be apparent before [it is] destroyed." (Punctuation omitted.) *Youngblood*, supra at 56. It is illogical to argue that the establishment of one prong of a two-prong requirement negates the second prong, when this Court has repeatedly held that *both* prongs must be shown to establish a due process violation. The majority's approach ignores precedent and endorses a departure from the decisions of the Supreme Court of Georgia. This Court has no such authority.[42]

(b) So, in order to dismiss the indictment, the State must have acted in "bad faith" of a constitutional dimension by failing to preserve Blackwell's urine sample. Perhaps in recognition of such, the majority also holds that "the trial court implicitly found bad faith here based on the State's disregard of its discovery order." This holding is incorrect both legally and factually.

(i) The type of "bad faith" that has constitutional dimension is motivated by a specific intent, i.e., a "conscious effort to suppress exculpatory evidence." *Trombetta*, supra at 488. "Bad faith" of a constitutional dimension is not the generalized, undefined "bad faith" referenced in OCGA § 17-16-6 which can be deliberate conduct motivated by anything from anger to stubbornness, based on the trial court's discretionary determination, and applies equally to the defense as well as the State. The type of "bad faith" that results in a constitutional due process violation cannot be found "implicitly" simply because there is a statutory discovery violation. The words, "bad faith," may be the same. But the legal concepts are not.

(ii) All participants in the court below agree that "the sample was no longer there because of crime lab policy," not because there was an attempt to suppress exculpatory evidence. No one acted in

---

[42] Two schools of thought have evolved over the last 12 years in state courts regarding the failure-to-preserve cases of *Trombetta* and *Youngblood*. Georgia and many of our sister states have determined that *Trombetta* and *Youngblood* must be read together and that constitutional materiality and bad faith must *both* be shown. *United States v. Femia*, 9 F3d 990, 993 (1st Cir. 1993); *United States v. Jobson*, 102 F3d 214, 218 (6th Cir. 1996); *State v. Berkley*, 567 A2d 915 (Me. 1989); *State v. Garcia*, 643 A2d 180 (R.I. 1994); *State v. Dulaney*, 493 NW2d 787 (Iowa 1992); *State v. Graham*, 118 N.C. App. 231 (454 SE2d 878) (1995); *Steese v. State*, 114 Nev. 479 (960 P2d 321) (1998); *State v. Ortiz*, 119 Wn.2d 294 (831 P2d 1060) (1992). See also *People v. Harris*, 182 Ill.2d 114 (695 NE2d 447) (1998), wherein Illinois adopts *Youngblood*'s bad faith requirement three years after *People v. Newberry*, 166 Ill.2d 310 (652 NE2d 288) (1995), cited by the majority herein, and authored by the two Justices who dissented in *People v. Newberry*.

The position now advocated by the majority is taken directly from the second school of thought which was rejected by our Supreme Court when it endorsed the two-prong requirement of "constitutional materiality" *and* "bad faith" in order to establish a due process violation.

"bad faith" of a constitutional dimension under the facts of this case:

> In failing to preserve . . . samples for respondents, the officers here were acting in good faith and in accord with their normal practice. The record contains no allegation of official animus towards respondents or of a conscious effort to suppress exculpatory evidence.

(Citation and punctuation omitted.) *Trombetta*, supra at 488.

(iii) Blackwell did not claim below and has not claimed on appeal that the State acted in "bad faith" in destroying the tested urine sample. And there was no finding of "bad faith" by the trial court: "[Trial Judge:] I'm not trying to go against the district attorney's office on any specific ground."

Accordingly, the State did not get a chance to defend against such charge at trial or on appeal. For this Court to now make such a serious finding as "bad faith" of a constitutional dimension on the record before us — without permitting the State any opportunity to respond — is truly "fundamentally unfair."

3. This case makes clear the old axiom "bad cases make bad law." The record in this case is deficient: it is unknown whether the sample was destroyed before or after the trial court's order; it is unknown whether the crime lab was aware of the court's order at the time of the destruction; it is unknown whether the trial court dismissed the indictment based on constitutional "fundamental fairness" grounds or based upon a violation of a duty the prosecutor allegedly held under the discovery statute; there was no finding of bad faith or allegation of such; the State did not get to defend against any allegation of bad faith; and the trial court dismissed the State's indictment when such remedy was not available for a discovery violation, if one existed.

I believe that this case should be remanded for specific findings of fact and conclusions of law. Let the trial court and the parties decide what happened to Blackwell's urine sample, when it happened, and why. Let the trial court determine whether there was "bad faith" on the part of the State and give the State an opportunity to defend against such charge. Let the trial court then fashion a legal remedy appropriate to its specific factual findings on this subject, with a right in the nonprevailing party to appeal. On the record before us now, I must respectfully dissent.

DECIDED JULY 14, 2000

*Roger G. Queen, District Attorney, John G. Wilbanks, Jr., Assistant District Attorney*, for appellant.
*William L. Reilly*, for appellee.