**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 15, 2013**

# In the Court of Appeals of Georgia

 A13A1461. MORRIS v. THE STATE.

BARNES, Presiding Judge.

The appeal follows the grant of Kevin Scott Morris' application for interlocutory review of the trial court's denial of his motion to dismiss his indictment for due process and fair trial violations. Upon our review, we affirm.

On November 19, 2008, Morris was indicted for 45 counts of sexual exploitation of children for the knowing possession of movies and images of minors engaged in sexually explicit conduct on his home computer. On December 22, 2008, he filed a "Motion for Discovery and Inspection of all Evidence Favorable to the Defendant" and notice of election to proceed under OCGA § 17-16-1. Thereafter, on January 15, 2009, Morris filed a motion for a ruling on preemption in which he asked that the trial court rule on whether the federal pornography statute preempts the Georgia statute. On that same day, he filed several additional motions, including a discovery motion for the State to provide him with a copy of all the "seized media,"

and a motion to dismiss for constitutional violations. He alleged that federal law criminalized his defense-related conduct, such as possession of pornographic images of children, and thus anticipated that he would be unable to prepare for trial in the same way afforded by the State. The record also includes a "Notice of Motion Hearing" filed on August 18, 2009 setting a hearing on "all pending motions" for September 9, 2009. There is no transcript of the hearing or orders reflecting the disposition of the motions included with the record, but the State later refers to an evidentiary hearing during that time period.

The record next reflects that on July 18, 2011, Morris filed a motion for a protective order in which he requested copies of all the alleged contraband materials, including his computer's hard drive, for forensic analysis by his computer expert. Ellis further maintained that his expert could not perform his testing at the Georgia Bureau of Investigation Gwinnett County Police Department or the District Attorney officer because "the government computers may not have the necessary software or updates . . . [and] may not have tools available that are critical to [his expert's] analysis." His expert averred, among other things, that the State's equipment might not be new and powerful enough to conduct the examination, and that it would be too

2

expensive and burdensome for him to conduct the examination outside of his "controlled" laboratory.

In his brief supporting his motion, Morris contended that the State had refused to provide copies of the contraband to his expert and that their refusal had due process implications because he was prevented from adequately preparing for trial. He further maintained that OCGA § 17-16-4 (a) (3) (B) was unconstitutional as its prohibition of his right to copy evidence, in conjunction with 18 USC §3509 (m) (1) (also known as the "Adam Walsh Act"), deprived him of his due process right to an adequate defense.[1] The State responded that it had never denied Morris access to the electronic evidence and that it had agreed to provide Morris' expert a copy of the hard drive with the images removed when he indicated that such a hard drive would be sufficient. The State also maintained that it had announced at numerous calendar calls

---

[1] OCGA § 17-16-4 (a) (3) (B) provides in relevant part that in the prosecution of, among other offenses, the sexual exploitation of children, "[w]ith respect to any books, papers, documents, photographs, tangible objects, audio and visual tapes, films and recordings, or copies or portions thereof which are within the possession, custody, or control of the state or prosecution and are intended for use by the prosecuting attorney as evidence in the prosecution's case-in-chief . . . such evidence shall, no later than ten days prior to trial, or as otherwise ordered by the court, be allowed to be inspected by the defendant but shall not be allowed to be copied."

18 USC § 3509 (m) (1) provides that "[i]n any criminal proceeding, any property or material that constitutes child pornography . . . shall remain in the care, custody, and control of either the Government or the court."

3

that the hard drives were available, and that it had provided Morris and two members of his legal team with a private room at the District Attorney's office and unlimited time to review the evidence. Finally, the State also asserted that the directives that child pornography remain in the control or custody of the government or court, set forth in 18 USC § 3509 (m) (1), apply to state as well as federal cases.

After a hearing on the motion, the trial court issued an order on September 29, 2011, denying Morris' motion for a protective order. The trial court found that requiring the defense expert to examine the hard drive in a private room ate the District Attorney's officer was not so burdensome as to deprive Morris a meaningful opportunity to prepare a defense. Specifically, the court held that OCGA § 17-6-4 (a) (3) (B) "does not deprive [Morris] of his due process rights to have an expert examine the State's evidence against him," and denied Morris' request to have an identical copy of the hard drive provided. It further directed the parties to "immediately confer and arrange a suitable time and opportunity for [Morris] to inspect and test the evidence."

Apparently a subsequent evidentiary hearing on Morris' request for the hard drive was conducted, after which, the trial court entered another order on March 2,

2012, finding that its directive in the September 29, 2011 order that Morris' expert conduct his examination of the hard drive at the District Attorney's office would be "unworkable," citing the cost, the potential for infringing upon the attorney-client privilege or for revelation of the defendant's strategies and defenses, the length of time for some of the tests, and the greater sophistication of the defense expert's equipment. The trial court found that the prohibition in OCGA § 17-16-4 (a) (3) (B) was unconstitutional as applied to Morris because it deprived him of his due process rights to have an expert examine the evidence against him and prepare a defense.[2] The court ordered the State and Morris to confer and submit a proposed protective order detailing the furnishing of a copy of the hard drives to Morris' expert for the "sole and limited purpose" of testing the hard drives in anticipation of trial.

The State and Morris submitted an agreed-upon protective order, which was adopted and signed by the trial court on May 17, 2012. The protective order provided, among other things, that the State acknowledge that defense counsel and expert's

---

[2] The trial court's ruling that OCGA § 17-16-4 (a) (3) (B) was unconstitutional as applied to Morris has not been challenged by the State and is not before us in this appeal.

conduct in complying with the protective order would not be a violation of any Georgia state criminal statute. However, the order also provided that:

> The parties acknowledge that this Order will not be deemed to be in effect until Defense Counsel and Expert obtain all reasonable assurances in writing from The United States that their conduct in compliance with this order *is not a violation of any federal statute, civil or criminal, including those statutes regulating child pornography.* A copy of such assurance received from the United States shall be provided to the State and submitted to this Court to become part of the court record. (Emphasis supplied.)

After letters were sent to three United States Attorneys in Georgia with no response, Morris filed another motion to dismiss the case. He claimed that because he had not received assurances from the United States Attorneys, he was unable to have an expert evaluate the evidence against him for fear of federal prosecution against his attorney and expert, and that his due process and fair trial rights were violated. The trial court denied the motion, finding "there is no statutory nor common law that authorizes the Dismissal of the indictment at this time for the reasons outlined in the Motion," but issued a certificate of immediate review. We subsequently granted Morris' application for interlocutory appeal.

On appeal, Morris contends that the trial court erred in denying his motion to dismiss for due process and fair trial violations because, although the trial court ordered that the State provide a copy of the hard drive to the defendant's attorney and expert, his attorney and expert are unable to take possession or investigate the hard drives without risking a federal investigation or prosecution for possessing child pornography. We are unpersuaded.

> The due process clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." Under this clause, criminal prosecutions must comport with prevailing notions of fundamental fairness. The United States Supreme Court has long held that fundamental fairness requires that criminal defendants be afforded a meaningful opportunity to present a complete defense, including the right of access to exculpatory evidence.

(Punctuation and footnotes omitted.) *State v. Blackwell*, 245 Ga. App. 135, 137 (2) (a) (537 SE2d 457) (2000). In this regard, our Supreme Court has recognized that "where the defendant's conviction or acquittal is dependent upon the identification of a substance as contraband, due process of law requires that analysis of the substance not be left completely within the province of the state." Id at 138 (2) (b); see *Patterson v. State*, 238 Ga. 204, 206 (232 SE2d 233) (1977). Under principles of

7

due process, "a criminal defendant on trial for his liberty is entitled on motion timely made to have an expert of his choosing, bound by appropriate safeguards imposed by the court, examine critical evidence whose nature is subject to varying expert opinion." (Citations and punctuation omitted.) *Sisson v. State*, 181 Ga. App. 784, 786 (353 SE2d 836) (1987).

In this case, Morris has not been denied access to the materials he has requested by an expert of his choosing. The trial court ordered that Morris' expert be provided with a copy of his computer's hard drive and that the parties devise a protective order detailing the conveyance of the materials. The provision requiring written assurances from United States Attorneys of non-prosecution for any potential violations of federal child pornography statutes before it took effect exceeded the authority granted to trial judges in the control of judicial proceedings. See *State v. Colquitt*, 147 Ga. App. 627, 628-629 (249 SE2d 680) (1978) (court's authority only extends to "the conduct of its officers and all other persons connected with a judicial proceeding before it.") The trial court has no authority over the United States Attorneys regarding their prosecutorial discretion. See generally *Reaves v. State*, 284 Ga. 181, 189 (3) (664 SE2d 211) (2008) (the trial court does not have the power to order a government crime lab to conduct tests for a defendant's benefit.). The

8

provision of the protective order requiring that the federal prosecutors essentially provide blanket immunity to defense counsel and Morris' expert is a nullity. See also *Tennille v. State*, 279 Ga. 884 (1) (622 SE2d 346) (2005) (noting that other states "have crafted means by which the defense can have meaningful access" to contraband materials "at the heart of the prosecution").

Moreover, Morris has not shown that the failure to obtain federal assurances prevented him from having meaningful access to the hard drive. The State is prepared to give him and his expert access to the hard drive, and nothing prevents the trial court from vacating the existing protective order to remove the references to federal assurances and adopting a new protective order. See *Daly v. State*, 285 Ga. App. 808, 811 (4) (b) (State's offer to give the defense a mirror image of Daly's hard drive and permit defense expert to observe the prosecution's examination comports with due process requirement of "meaningful access"). Nor is there any evidence to suggest that Morris' expert would be prosecuted under the federal statute when he is acting within the confines of a court order authorizing examination of the hard drive for a judicial proceeding. Morris has also failed to show that without the federal immunity he would be unable to obtain the services of any expert forensic examiner. Under these circumstances, and at this stage of proceedings, Morris' due process and fair

9

trial claims are simply too speculative to justify the drastic remedy – dismissal of the indictment – which he seeks. See *Weeks v. State*, 190 Ga. App. 373, 374 (1) (378 SE2d 895) (1989) ("In light of the total absence of any indication of prejudice, defendant cannot rely on speculative harm.")

Thus, as the evidence does not demonstrate that Morris has been denied meaningful access to the materials at issue, the trial court did not err in finding that his due process rights had not been violated and in denying his motion to dismiss. See *Milton v. State*, 232 Ga. App. 672, 678-679 (6) (503 SE2d 566) (1998) (even the State's failure to preserve potentially useful evidence does not constitute a denial of due process of law unless a criminal defendant can show bad faith on the part of the police).

*Judgment affirmed. Miller, J. concurs. Ray, J., concurs in judgment only.*